**Lester Morris PICKENS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 43676.**

Court of Criminal Appeals of Texas.

May 5, 1971.

**564**

V. G. Kolius, Amarillo, for appellant.

Tom Curtis, Dist. Atty., and Robin Green, Asst. Dist. Atty., Amarillo, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

ODOM, Judge.

This is an appeal from an order revoking probation.

The record reflects that appellant pleaded guilty to the offense of Robbery by Assault on July 22, 1965, and his punishment was assessed at 10 years. An order was entered suspending the imposition of sentence and the appellant was placed on probation. One of the terms and conditions of probation was that he: "(1) Commit no offense against the laws of this or any other state or of the United States; * * *."

On February 2, 1970, a motion to revoke appellant's probation was filed, alleging that he violated the aforementioned term. On March 25, 1970, an amended motion to revoke was filed, alleging:

"* * * That the said defendant, Lester Morris Pickens, on or about the 11th day of January, 1970, a date subsequent to the above mentioned conviction, in the County of Potter and State of Texas, did then and there unlawfully and wilfully interfere with a nurse, to-wit: Grace M. Garrett, while the said Grace M. Garrett was in the exercise of functions intended to contain injury to persons during a civil disturbance, Against the Peace and Dignity of the State.

* * * * * *

"Further, the said Lester Morris Pickens, on or about the 11th day of January 1970, a date subsequent to the above mentioned conviction, in the County of Potter, State of Texas, did then and there in a public place, to-wit: Northwest Texas Hospital, 2200 West 7th, Amarillo, Texas, engage in an unreasonable disorderly conduct in such manner to cause or provoke a disturbance, Against the Peace and Dignity of the State."

A hearing was held on the amended motion and the court found:

"* * * certainly his actions at the hospital were intentional, and in that sense, willful. His actions did interfere with the *nurse* in her treatment of the deceased's mother. * * * and he did engage in unreasonable and *disorderly conduct* in a manner calculated to provoke disturbance by making the comment * * * with reference to overpowering the resistance and getting back into the room, despite the fact that he had been ejected from it at least twice and probably three times, * * *

"I think his action in—in effect, inciting mob violence in this case by advocating that they storm the door of the room in which the *nurses* and the body and

mother of the deceased were, clearly *disorderly conduct* in a manner to cause or provoke a disturbance.

"Therefore, the opinion and judgment of the Court that the defendant has violated the term of his probation, and that his probation should be, and is hereby revoked." (Emphasis supplied.)

Appellant contends that the court abused its discretion by revoking his probation "and there was no evidence that at the time and place of said incident that a riot, civil disturbance or public disaster had occurred, or was in progress, or that appellant acted wilfully."

The record reflects that on the date in question a shooting occurred in front of the Club De Lisa in Amarillo. Shortly after the shooting a crowd estimated at from 100 to 200 people gathered around, creating a disturbance and making it very difficult for the law enforcement officers to control the crowd. Deputy Sheriff Garrett testified: " * * * and then, that is when I went to try to get the ambulance to come in more closer so we could get the body right away, and that is when I had problems to get the people back, so the men could drive in. He almost had to push people out of the way with the ambulance." The witnesses identified appellant as one of the persons creating the disturbance.

A witness was then asked:

"Q. How long did it take to disperse the crowd after the ambulance left?

"A. When the ambulance left, why, the crowd left about, I guess about 10 or 15 minutes, all of them rushed out to the hospital."

Witness McAdams, describing appellant's action at the hospital, testified:

"I was standing with my back to the doorway, and Deputy Sheriff John P. Allen was standing there by the doors with me, and I heard Mr. Pickens make the statement in a loud voice that—I don't recall the exact wording of it; it was to the effect that there aren't very many in there, and that if we all rushed them, we can get in; they can't stop us, I believe that was the ending of it.

"Q. Did you see him make that statement?

"A. No, sir, as—I didn't, as I turned he was talking and finishing the statement up just as I turned, but I didn't see just who he was addressing. He was facing primarily with his back towards the emergency room, and speaking out towards the crowd gathered in the hallway."

Witness Allen, testifying in regard to appellant's actions at the hospital, testified as follows:

"A. Several times, two or three times, maybe four, I put him out myself, I just, you know, you can't stay in here, come on.

"Q. Did you ever hear him say anything about coming into the emergency room area?

"A. I did.

"Q. What was that?

"A. Well, he was outside of the double doors, and I was up to the door trying to keep people out.

"Q. Yes.

"A. And he said there is only three or four of them, and if we storm in the door, there is nothing they can do about it."

We hold that there was sufficient evidence to support the trial court's finding that appellant committed an offense against the laws of this state. See Arts. 472a and 474 Vernon's Ann.P.C. The court did not abuse its discretion by revoking his probation. See Blackshire v. State, Tex.Cr. App., 464 S.W.2d 108; Foote v. State, Tex. Cr.App., 463 S.W.2d 445.

Finding no reversible error, the judgment is affirmed.

DOUGLAS, Judge (concurring).

I concur in the opinion affirming this cause. It is only where there has been an abuse of discretion that this Court reverses a revocation of probation. The trial judge hears the witnesses, observes their demeanor and passes upon their credibility. We should not take the place of hearing judge or pick out isolated portions of the record instead of the entire record in making our decisions. Considering the evidence in light most favorable to the finding of the trial court, as we must do, there was sufficient evidence for him to revoke probation. No abuse of discretion has been shown.

MORRISON, Judge (dissenting).

I do not find it necessary to join Judge Onion's dissent as I find that this revocation of probation must be reversed because of a violation of the First Amendment of the Constitution of the United States. It is inescapable that the judge did not revoke probation in this case because of the disturbance at Van Buren Street. Additionally, the trial court found that the defendant did not deliberately interfere with the nurse in her attempts to treat the deceased or the deceased's mother. From this writer's reading of the record, I must conclude that the trial court revoked probation solely on the basis of the third allegation in the motion.

As I view this record it reveals the following: Appellant's friend of many years was shot and killed, and there was considerable delay in the arrival of the ambulance. Appellant followed the body of the deceased to the hospital, where the basis of this revocation of probation occurred. Appellant was anxious to see the body and to assist the deceased's mother and sisters in gaining entrance to the emergency room. He three times attempted to enter the treatment room where the mother and sisters were located; upon being asked to leave by the police officer and the nurse he did so in an orderly manner.[1] The testimony consistently shows that the approximately thirty people gathered in the waiting room, many of whom were friends or relatives of the deceased, behaved in an orderly fashion. When the appellant made the statement quoted in the majority opinion, one of the persons present replied, "Get out of the way and stop this foolishness." Nothing further occurred.

It appears to this writer that this revocation of probation is bottomed upon the statement made by appellant. It is important that we closely examine just exactly what the appellant said (emphasis added). One version states that appellant said: "There aren't many in there, * * * *if* we all rushed them, we can get in; they can't stop us." The other version was: "There is only three or four of them, and *if* we storm in the door, there is nothing they can do about it." It is to be noted that appellant nowhere made the outright assertion that the persons gathered in the lobby should join together and storm the door, he simply stated what appeared to be a fact; i. e., if they all stormed the door they could get in. Furthermore, the record reflects that appellant was not hollering or shouting, that he was at most speaking in a tone of voice which was "loud enough to be heard by apparently several of the people in the vicinity."

Speaking for the United States Supreme Court in Schenck v. United States, 249 U. S. 47 at 52, 39 S.Ct. 247, 249, 63 L.Ed. 470, Mr. Justice Holmes stated: "The question in every case is whether the words are used in such circumstances and are of such a nature as to create a clear and present danger that they will bring about the substantive

---

1. The record shows that appellant was an employee of an affiliated hospital, that he had a card which identified him as such, and that he exhibited this card in his efforts to gain admission to the emergency room.

evils that Congress has a right to prevent. It is a question of proximity and degree." Compare Cantwell v. Connecticut, 310 U.S. 296 at 309–311, 60 S.Ct. 900, 84 L.Ed. 1213. See also Niemotko v. Maryland, 340 U.S. 268 at 273, 71 S.Ct. 325, 95 L.Ed. 267. The "substantive evil" to be prevented in this case is a breach of the peace, a storming of the emergency room, or some type of willful *action* which amounted to "disorderly conduct."

As this writer views the record, the situation presented is that of an accused who, having lost his friend in a sudden death, follows the body to the hospital and while there makes irrational and imprudent statements to an orderly and concerned group of people who were, to a large extent, friends and relatives of the deceased. I fail to believe that such statements amount to a crime, particularly when considered in the light of the First Amendment. Therefore, I must respectfully dissent to the affirmance of this revocation of probation.

ONION, Presiding Judge (dissenting).

I cannot agree that the evidence is sufficient to sustain the revocation of probation.

The amended motion to revoke probation filed on March 25, 1970, alleges in part:

"That the said defendant, Lester Morris Pickens, on or about the 11th day of January, 1970, a date subsequent to the above mentioned conviction, in the County of Potter and State of Texas, did then and there unlawfully and wilfully interfere with a nurse, to-wit: Grace M. Garrett, while the said Grace M. Garrett was in the exercise of functions intended to contain injury to persons during a civil disturbance, Against the Peace and Dignity of the State.

Further, the said Lester Morris Pickens, on or about the 11th day of January, 1970, a date subsequent to the above mentioned conviction, in the County of Potter, State of Texas, did then and there in a public place, to-wit: the 300 Block of Van Buren Street, Amarillo, Texas, engage in an unreasonable disorderly conduct in such a manner to cause or provoke a disturbance, Against the Peace and Dignity of the State.

Further, the said Lester Morris Pickens, on or about the 11th day of January, 1970, a date subsequent to the above mentioned conviction, in the County of Potter, State of Texas, did then and there in a public place, to-wit: Northwest Texas Hospital, 2200 West 7th, Amarillo, Texas, engage in an unreasonable disorderly conduct in such manner to cause or provoke a disturbance, Against the Peace and Dignity of the State."

The record reflects that on January 11, 1970, one Ronald McDonald, a close friend of the appellant, was shot by one Preston Cheeks near the Club De Lisa in Amarillo and fell face down in the street. When appellant arrived on the scene he obtained permission from the officer in charge to determine if his friend was still alive, and he turned McDonald's face out of a puddle of mud. Soon a crowd of 100 to 200 people gathered, apparently angry about the shooting, and the delay in getting aid to McDonald, and began yelling "honkies" and "pigs." The witnesses described the disturbance and named the ring leaders, but they did not include the appellant. Only one witness said he observed the appellant yelling "honkies" and "pigs" along with most of the others in the crowd.

The ambulance driver testified that McDonald did not appear to be alive at the scene and upon arrival at the hospital the nurses related he showed no vital signs of life. No doctor was on duty at the time.

The appellant and several others arrived anxious to determine the condition of their friend. When the appellant and three or four others were asked to leave the emergency room he displayed a civil defense card, but was told by the nurse in charge there was no emergency and he would

have to retire to the waiting room which he did. Later he re-entered the emergency room attempting to get McDonald's mother and sister, etc., permission to enter, which was granted. He was again asked to leave and did. He later re-entered asking permission to comfort the mother of the deceased, which was refused and he was again asked to leave. The group outside was estimated to be from 15 to 20 persons during this period of time.

Superintendent of Nurses Garrett testified that appellant had entered the emergency room twice before the deceased's mother arrived; that later McDonald's mother became upset, hysterical, and though not a patient at the hospital, she began to care for her, bathing her face with a wet cloth, taking her pulse and her blood pressure. She related that when the appellant re-entered the emergency room she had to stop taking the pulse and blood pressure readings and ask him to leave; that if he had not continued to come in she could have attended to her duties on the other floors of the hospital.

While the appellant denied making such statement, two officers testified they heard him urge the 15 to 20 people to rush in as they could not be stopped. No such action ever occurred.

The group of people there was described as "orderly," many being friends or relatives of the deceased. They remained mostly in the hallway or waiting room of the hospital which was open to the public.

The appellant was not arrested and subsequently left for the funeral home.

The record clearly reflects that each time the appellant was asked to leave, he did, even though reluctantly, without causing any trouble or difficulty.

At the conclusion of the hearing on the motion to revoke, the court found "the evidence would not be sufficient to show beyond a reasonable doubt any disorderly conduct at the scene (on Van Buren Street), and I can readily imagine how disturbed the defendant might have been by the shooting of his friend."

The court expressed the thought that it was difficult to determine from the facts whether the appellant had "willfully interfered with a nurse in the exercise of her functions intended to contain injury to persons during a civil disturbance" in light of "the phraseology of this statute." Article 472a, V.A.P.C.

He did, however, find a violation of that statute and Article 474, V.A.P.C.

Was there, under the circumstances, a violation of Article 472a, supra? Such statute provides:

"Section 1. 'Interfere' as that term is used herein shall mean to intervene and thereby obstruct passage or free movement, materially delay, or prohibit, by direct or devious means."

"Section 2. It shall be unlawful for any person to willfully interfere with any fireman, policeman, or other peace officer in the lawful discharge of his duties, or with any doctor, nurse, or ambulance attendant while any such persons are in the exercise of functions intended to control, reduce or contain injury to persons or property during a riot, civil disturbance, or other public disaster."

"Section 3. Any person who shall violate the provisions hereof shall be guilty of a felony and upon conviction shall be confined in the state penitentiary for not less than two nor more than 10 years."

"Section 4. The provisions of this Act shall be cumulative of all other penal laws of this state."

"Section 5. If any provision of this Act or the application thereof to any person or circumstance is held invalid, such invalidity shall not affect other provisions and applications of this Act which can be given effect without the invalid provision or application, and to

this end the provisions of this Act are declared to be severable. Acts 1969, 61st Leg., p. 1952, ch. 654, eff. September 1, 1969."

First, the evidence simply fails to reflect that at the hospital there was a riot, civil disturbance (as alleged in the motion to revoke) or other public disaster, nor was there shown to be any injury to Mc-Donald's mother for which she was being treated, or that appellant's action fell within the definition of the term "interfere" as defined in the statute. No violation of Article 472a, supra, was shown.

This leaves only the question of whether the evidence reflects a violation of Article 474, V.A.P.C., as amended 1969. Assuming the constitutionality of the statute and that it is not vague and uncertain nor overly broad and susceptible of sweeping and improper application violative of the First Amendment, it is noted that neither the trial judge nor the majority points out just what subsection of Section 1 of the statute defining "disorderly conduct" was violated.

In light of the allegations of the motion to revoke, and the facts offered, I cannot conclude there was a sufficient basis for the revocation in this case.

I dissent.