**Lester Morris PICKENS, Petitioner-Appellant,**

v.

**The STATE OF TEXAS, Respondent-Appellee.**

**No. 73–3121.**

United States Court of Appeals, Fifth Circuit.

July 19, 1974.

Certiorari Denied Oct. 15, 1974. See 95 S.Ct. 145.

John T. Montford, Lubbock, Tex. (Court-appointed), for petitioner-appellant.

John L. Hill, Atty. Gen., of Tex., E. Bruce Curry, Thomas W. Choate, Asst. Attys. Gen., Austin, Tex., for respondent-appellee.

Before RIVES, GEWIN and RONEY, Circuit Judges.

PER CURIAM:

Lester Pickens filed a petition for writ of habeas corpus in the United States District Court seeking to remove a detainer warrant placed on him by the State of Texas. Pickens was serving a Texas 10 year probated sentence for robbery by assault when he participated in activity alleged to be in violation of the terms and conditions of the State probation in that he interfered with a nurse in the exercise of her duties and engaged in disorderly conduct both of which were offenses against Texas law. Texas Penal Code, Art. 472a, Vernon's Ann.P.C., and Art. 474, V.A.P.C. A hearing was held in the state court, Pickens was found in violation of the terms of his probation, and the probation was revoked. Subsequently convicted and incarcerated in the Federal Correctional Institution at Fort Leavenworth, Kansas, on federal charges stemming from another occurrence, a detainer warrant was filed by the State of Texas pertaining to the probation revocation.

After exhausting his state remedies, Pickens seeks to remove the detainer asserting that the probation revocation proceeding was constitutionally infirm because the acts which were found to be violations of the terms and conditions of his probation were in fact protected by the First and Fourteenth Amendments of the United States Constitution. The District Court, in a well reasoned opinion which is appended hereto as an appendix, found that the state trial judge had not abused his discretion in revoking Pickens' probation and thus denied the relief sought.

The sole issue on this appeal is whether the state trial judge abused his discretion in revoking Pickens' probation. To grant habeas corpus relief, we must find an abuse of discretion which reaches constitutional magnitude. This we do not find and, consequently, we affirm.

■■ The revocation of a probated sentence is within a trial court's discretionary powers and will not be disturbed without a clear showing of an abuse of that discretion. United States v. Garza, 484 F.2d 88 (5th Cir. 1973); United States v. Langley, 438 F.2d 91 (5th Cir. 1970); Burns v. United States, 287 U.S. 216, 221, 53 S.Ct. 154, 77 L.Ed. 266 (1932). It is not an abuse of discretion to revoke probation based on a finding that the conduct of the probationer has not been as good as required by the conditions of the probation. United States v. Bryant, 431 F.2d 425 (5th Cir. 1970); United States v. Clanton, 419 F.2d 1304 (5th Cir. 1969); Manning v. United States, 161 F.2d 827, 829 (5th Cir.), cert. denied, 332 U.S. 792, 68 S.Ct. 102, 92 L.Ed. 374 (1947).

■ Pickens argues that his conduct was not an offense against the State of Texas but was protected by the First Amendment. Before the constitutional question is reached, however, it must be recognized that a "revocation of probation does not require proof sufficient to sustain a criminal conviction." United

States v. Garza, 484 F.2d 88, 89 (5th Cir. 1973); Amaya v. Beto, 424 F.2d 363 (5th Cir. 1970); Manning v. United States, 161 F.2d 827, 829 (5th Cir.), cert. denied, 332 U.S. 792, 68 S.Ct. 102, 92 L.Ed. 374 (1947).

In *Manning*, the conditions of probation required that the probationer not violate any law. The probated sentence was revoked based on the charge that Manning was using the mails to defraud and was practicing medicine without a license. In answer to Manning's contention that the evidence was insufficient to support a conviction on either charge, the Court stated that

> proof sufficient to support a criminal conviction is not required to support a judge's discretionary order revoking probation. A judge in such proceeding need not have evidence that would establish beyond a reasonable doubt guilt of criminal offenses. All that is required is that the evidence and facts be such as to reasonably satisfy the judge that the conduct of the probationer has not been as good as required by the conditions of probation.

161 F.2d at 829. *See* United States v. Langley, 438 F.2d 91 (5th Cir. 1970) (Revocation based on allegedly improper state conviction upheld); United States v. Bryant, 431 F.2d 425 (5th Cir. 1970) (Revocation based on alleged insufficient evidence to charge crime upheld); United States v. Clanton, 419 F.2d 1304 (5th Cir. 1969) (Revocation based on dismissed state charge upheld).

The state trial judge found that Pickens' conduct was disorderly. The record supports that finding. His decision to revoke probation did not amount to an abuse of discretion.

 In affirming the District Court's denial of habeas corpus relief to Pickens, we do not determine in any manner the scope of First Amendment rights possessed by a probationer. We merely hold that the state trial judge did not abuse his discretion in determining that Pickens' conduct, other than that which arguably might be protected by the First Amendment, was contrary to the terms of his probation and supported its revocation.

Affirmed.

## APPENDIX

### MEMORANDUM AND ORDER

Petitioner, Lester Morris Pickens, is presently a federal prisoner by virtue of sentence on June 18, 1971, by the Judge of the United States District Court for the Northern District of Kansas. He had originally been convicted on July 22, 1965 in the 47th Judicial District Court of Potter County, Texas and placed on probation for a period of ten years. On April 16, 1970, the probation in the Texas case was revoked and Petitioner was sentenced to serve ten years in the Texas Department of Corrections. Revocation of probation was affirmed, with two vigorous dissenting opinions, by the Court of Criminal Appeals of Texas. Pickens v. State, 466 S.W.2d 563 (Tex. Cr.App.1971).

While Petitioner's case was on appeal to the Texas Court of Criminal Appeals he was delivered into the custody of the United States Marshal to answer federal charges pending against him in the Northern District of Kansas. The conviction on those charges resulted in the sentence which he is now serving. State of Texas has placed a detainer with the federal authorities.

Petitioner has filed application for writ of habeas corpus pursuant to Title 28 United States Code, Section 2241 et seq., and is proceeding in forma pauperis. He is not challenging the federal conviction. He contends that (1) the detainer placed by the State of Texas is invalid because the State of Texas lost jurisdiction over him when it surrendered him to federal authorities and (2) the revocation of probation by the state judge is constitutionally infirm, because the acts urged by the State of Texas as being violations of terms and conditions of probation are in fact protected by the First Amendment and Fourteenth Amendment to the United States Consti-

tution. All available state remedies have been exhausted and the challenges are properly before this Court.

The records of the case conclusively show that Petitioner is entitled to no relief in his contention that the State of Texas has lost jurisdiction to file its detainer. It is well settled that when state authorities surrender a prisoner to federal authorities for prosecution and service of sentence the state has not waived its right to have the prisoner returned to its custody for trial or service of sentence. Dorrough v. Texas, 5th Cir. 1971, 440 F.2d 1063; Montos v. Smith, 5th Cir. 1969, 406 F.2d 1243; Bilton v. Beto, 5th Cir. 1968, 403 F.2d 664.

Petitioner's contention that his First and Fourteenth Amendment rights were violated presents a more difficult issue. This Court has before it the transcription of the proceedings of the hearing conducted by the trial judge on the state's application to revoke probation. The fact summary in the opinion of Presiding Judge Onion of the Texas Court of Criminal Appeals is supported by the record and is adopted by this Court:

"The record reflects that on January 11, 1970, one Ronald McDonald, a close friend of the appellant, was shot by one Preston Cheeks near the Club De Lisa in Amarillo and fell face down in the street. When appellant arrived on the scene he obtained permission from the officer in charge to determine if his friend was still alive, and he turned McDonald's face out of a puddle of mud. Soon a crowd of 100 to 200 people gathered, apparently angry about the shooting, and the delay in getting aid to McDonald, and began yelling 'honkies' and 'pigs'. The witnesses described the disturbance and named the ring leaders, but they did not include the appellant. Only one witness said he observed the appellant yelling 'honkies' and 'pigs' along with most of the others in the crowd.

The ambulance driver testified that McDonald did not appear to be alive at the scene and upon arrival at the hospital the nurses related he showed no vital signs of life. No doctor was on duty at the time.

The appellant and several others arrived anxious to determine the condition of their friend. When the appellant and three or four others were asked to leave the emergency room he displayed a civil defense card, but was told by the nurse in charge there was no emergency and he would have to retire to the waiting room which he did. Later he re-entered the emergency room attempting to get McDonald's mother and sister, etc., permission to enter, which was granted. He was again asked to leave and did. He later re-entered asking permission to comfort the mother of the deceased, which was refused and he was again asked to leave. The group outside was estimated to be from 15 to 20 persons during this period of time.

Superintendent of Nurses Garrett testified that appellant had entered the emergency room twice before the deceased's mother arrived; that later McDonald's mother became upset and hysterical, and though not a patient at the hospital, she began to care for her, bathing her face with a wet cloth, taking her pulse and her blood pressure. She related that when the appellant re-entered the emergency room she had to stop taking the pulse and blood pressure readings and ask him to leave; that if he had not continued to come in she could have attended to her duties on the other floors of the hospital.

While the appellant denied making such statement, two officers testified they heard him urge the 15 to 20 people to rush in as they could not be stopped. No such action ever occurred.

The group of people there was described as 'orderly,' many being friends or relatives of the deceased. They remained mostly in the hallway or waiting room of the hospital which was open to the public.

The appellant was not arrested and subsequently left for the funeral home.

The record clearly reflects that each time the appellant was asked to leave, he did, even though reluctantly, without causing any trouble or difficulty."

The State of Texas filed motion to revoke probation essentially contending that (1) Pickens unlawfully and willfully interfered with a nurse while the nurse was in the exercise of functions intended to contain injury to persons during a disturbance,[1] (2) Pickens engaged in an unreasonable disorderly conduct at the scene of the shooting in such manner to cause or provoke a disturbance and (3) Pickens engaged in an unreasonable disorderly conduct in the hospital in such manner to cause or provoke a disturbance.[2]

1. *Penal Code, Art. 472a. Interference with firemen, peace officers, or medical service personnel during riots, etc.*

Section 1. "Interfere" as that term is used herein shall mean to intervene and thereby obstruct passage or free movement, materially delay, or prohibit, by direct or devious means.

Sec. 2. It shall be unlawful for any person to willfully interfere with any fireman, policeman, or other peace officer in the lawful discharge of his duties, or with any doctor, nurse, or ambulance attendant while any such persons are in the exercise of functions intended to control, reduce or contain injury to persons or property during a riot, civil disturbance, or other public disaster.

Sec. 3. Any person who shall violate the provisions hereof shall be guilty of a felony and upon conviction shall be confined in the state penitentiary for not less than two nor more than 10 years.

Sec. 4. The provisions of this Act shall be cumulative of all other penal laws of this state.

Sec. 5. If any provision of this Act of the application thereof to any person or circumstance is held invalid, such invalidity shall not affect other provisions and applications of this Act which can be given effect without the invalid provision or application, and to this end the provisions of this Act are declared to be severable.

2. *Texas Penal Code, Art. 474. Disorderly conduct.*

Section 1. No person, acting alone or in concert with others, may engage in disorderly conduct. Disorderly conduct consists of any of the following:

(1) behavior of a boisterious and tumultuous character in a residential area or a public place such that there is a clear and present danger of alarming persons where no legitimate reason for alarm exists; or

(2) interfering with the peaceful and lawful conduct of persons in or about their homes or public places under circumstances in which such conduct tends to cause or provoke a disturbance; or

(3) violent and forceful behavior at any time in or near a public place, such that there is a clear and present danger that free movement of other persons will be arrested or restrained, or other persons will be incapacitated in the lawful exercise of business or amusement; or

(4) behavior involving personal abuse or assault when such behavior creates a clear and present danger of causing assaults or affrays; or

(5) in a public or private place engages in violent, abusive, indecent, profane, boisterous, unreasonably loud, or otherwise disorderly conduct under circumstances in which such conduct tends to cause or provoke a disturbance; or

(6) wilful and malicious behavior that interrupts the speaker of any lawful assembly or impairs the lawful right of others to participate effectively in such assembly or meeting when such conduct tends to cause or provoke a disturbance; or

(7) behavior near a courthouse or other public building wherein judicial proceedings are being held, designed or having the effect of interfering with the administration of justice, whether by disrupting the courts or by intimidating the judges, witnesses, jurors, or other persons having business with the courts; or

(8) behavior near any public building wherein matters affecting the public are being considered or deliberated, designed or having the effect of interfering with such proceedings under circumstances in which such conduct tends to cause or provoke a disturbance; or

(9) wilful and malicious behavior which obstructs or causes the obstruction of any doorway, hall, or any other passageway in a public building to such an extent that the employees, officers, and other persons, including visitors and tourists, having business with the government are denied entrance into, exit from, or free passage in such building; or

(10) behavior involving the display of any deadly weapon in a public place in such a manner as to alarm or frighten other persons present; or

The trial court found the allegation concerning disorderly conduct at the scene of the shooting to be without merit and had difficulty finding a violation by Petitioner of the statute concerning interference with a nurse in violation of Texas Penal Code, Art. 472a. He did find that Petitioner had engaged in disorderly conduct in violation of Texas Penal Code, Art. 474 and revoked the probation.[3]

The thrust of Petitioner's challenge is that the statements alleged to have been made by him and upon which the revocation of probation was based are protected rights under the First and Fourteenth Amendments. He contends further that Texas Penal Code Article 472a and Texas Penal Code Article 474 are unconstitutional in that each of those statutes is overly broad and vague.

The attack on the constitutionality of the statutes cannot be considered by this Court. Neither contention has been meaningfully presented to the Courts of the State of Texas, where the responsibility for initial determination of claims of constitutional deprivation lies. Therefore, the challenges concerning constitutionality of those statutes are dismissed without prejudice.

This Court pretermits determination of the scope of First Amendment rights possessed by a probationer. The law is well settled that revocation of probation is an exercise of the trial court's broad discretionary powers and such action will not be disturbed in the absence of a clear showing of abuse of that discretion. Proof sufficient to support a criminal conviction is not required to support a discretionary order revoking probation. All that is required is that the evidence and facts reasonably satisfy the judge that the conduct of the probationer has not been as good as required by the conditions of probation. United States v. Langley, 5th Cir. 1970, 438 F. 2d 91, 92; United States v. Clanton, 5th Cir. 1969, 419 F.2d 1304; Manning v. United States, 5th Cir. 1947, 161 F.2d 827, 829, cert. den., 332 U.S. 792, 68 S. Ct. 102, 92 L.Ed. 374.

This Court cannot say that the trial judge clearly abused his discretion or in any manner committed error of constitutional dimensions in revoking the probation. Petitioner is not entitled to the writ of habeas corpus.

It is, therefore, ordered that the application of Lester Morris Pickens for writ

---

(11) enters upon the property of another and for a lewd or unlawful purpose deliberately looks into a dwelling on the property through any window or other opening in it.

Sec. 2. Any person who violates any of the provisions of Section 1 of this Article shall be guilty of a misdemeanor and upon conviction shall be punished by a fine of not more than Two Hundred Dollars ($200). For any second or subsequent conviction of any of the provisions of Section 1 of this Article such person shall be punished by a fine of not less than One Hundred Dollars ($100) nor more than One Thousand Dollars ($1,000), or by imprisonment in the county jail for not more than thirty (30) days or by both such fine and imprisonment.

3. *Statement of Facts. Probation Revocation, March 25, 1970, p. 187.*
"Now, much more serious and more substantuating charge is the last charge against him, in that instead of cooperating and he did engage in unreasonable and disorderly conduct in a manner calculated to provoke disturbance by making the comment that he denies making, but that is testified to by two officers, with reference to overpowering the resistence and getting back into the room, despite the fact that he had been ejected from it at least twice and probably three times, and this sort of thing just cannot be tolerated, because a hospital is a place where people are supposed to be treated and helped, and the fact that these people may have been concerned about whether this man was alive or dead cannot be permitted to disrupt the orderly function of the public hospital. I think his action in—in effect, inciting mob violence in this case by advocating that they storm the door of the room in which the nurses and the body and mother of the deceased were, clearly disorderly conduct in a manner to cause or provoke a disturbance.

Therefore, the opinion and judgment of the Court that the defendant has violated the term of his probation, and that his probation should be, and is hereby, revoked.

of habeas corpus be, and it is hereby, denied.

This is a final judgment.

The Clerk is directed to file this Memorandum and Order and to send a true copy to Petitioner and a copy to each attorney of record.

Done at Amarillo, Texas this 6th day of July, 1973.

s/ Halbert O. Woodward
United States District Judge

RIVES, Circuit Judge (dissenting):

The district court adopted and quoted the fact summary in the opinion of Presiding Judge Onion of the Texas Court of Criminal Appeals. See Appendix to this Court's majority opinion and Pickens v. State, 466 S.W.2d 563, 567. The district court then reviewed the contentions made by the State of Texas in its amended motion to revoke Pickens' probation, and concluded that the Texas trial court found that Pickens had engaged in disorderly conduct in violation of Texas Penal Code, Art. 474. In particular, the Texas trial court made the following remarks in revoking Pickens' probation:

"Now, much more serious and more substantuating [sic] charge is the last charge against him, in that instead of cooperating and he did engage in unreasonable and disorderly conduct in a manner calculated to provoke disturbance by making the comment that he denied making, but that is testified to by two officers, with reference to overpowering the resistance and getting back into the room, despite the fact that he had been ejected from it at least twice and probably three times, and this sort of thing just cannot be tolerated, because a hospital is a place where people are supposed to be treated and helped, and the fact that these people may have been concerned about whether this man was alive or dead cannot be permitted to disrupt the orderly function of the public hospital.

"I think his action in—in effect, inciting mob violence in this case by advocating that they storm the door of the room is which the nurses and the body and mother of the deceased were, clearly disorderly conduct in a manner to cause or provoke a disturbance.

"Therefore, the opinion and judgment of the Court that the defendant has violated the term of his probation, and that his probation should be, and is hereby, revoked."

With deference, I disagree with the basis of the majority holding—that is, that the state trial court based the revocation on conduct other than that arguably protected by the First Amendment. The above-quoted portion of the opinion of the Texas trial court makes it clear to me that the basis for the revocation of probation was Pickens' comment concerning rushing into the emergency room.

The federal district court "pretermitted determination of the scope of first amendment rights possessed by a probationer," stating that,

"The law is well settled that revocation of probation is an exercise of the trial court's broad discretionary powers and such action will not be disturbed in the absence of a clear showing of abuse of that discretion. Proof sufficient to support a criminal conviction is not required to support a discretionary order revoking probation. All that is required is that the evidence and facts reasonably satisfy the judge that the conduct of the probationer has not been as good as required by the conditions of probation [cases omitted].

"This Court cannot say that the trial judge clearly abused his discretion or in any manner committed error of constitutional dimensions in revoking the probation."

Since it seems to me that Pickens' comment was the basis for the revocation, I think the district court should have ascertained whether his statement was

protected by the First Amendment.[1] Revocation of probation either for speech protected by the Constitution or for violation of a state law, where such violation is based upon speech protected by the Constitution, would surely constitute an abuse of discretion.

In Brandenburg v. Ohio, 1969, 395 U. S. 444, 447, 89 S.Ct. 1827, 1829, 23 L. Ed.2d 430, the Supreme Court recapitulated the test for whether speech is protected by the First Amendment:

> "These later decisions have fashioned the principle that the constitutional guarantees of free speech and free press do not permit a State to forbid or proscribe advocacy of the use of force or of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action."

In the present case, Judge Onion made the following relevant observations:

> "While the appellant denied making such statement, two officers testified they heard him urge the 15 to 20 people to rush in as they could not be stopped. No such action ever occurred.
>
> "The group of people there was described as 'orderly,' many being friends or relatives of the deceased. They remained mostly in the hallway or waiting room of the hospital which was open to the public."

Judge Morrison in dissent noted that according to both versions of what Pickens said, Pickens "nowhere made the outright assertion that the persons gathered in the lobby should join together and storm the door, he simply stated what appeared to be a fact; i. e., if they all stormed the door they could get in." 466 S.W.2d 566.[2] Judge Morrison also noted that Pickens was not hollering or shouting, that he was at most speaking in a tone of voice which was "loud enough to be heard by apparently several of the people in the vicinity." After Pickens made the statement in question, one of the persons present said, according to Judge Morrison, "Get out of the way and stop this foolishness."

In light of the facts revealed by the record in this case, there is serious question whether Pickens' statement was truly "directed to inciting or producing imminent lawless action." His statement apparently was in a hypothetical form and was not linked with any other remarks of an inflammatory or persuasive nature. Very possibly his statement was meant simply as an expression of anger at being excluded from the presence of his dying friend. Certainly his statement was not "likely to incite or produce such action." This is demonstrated by the orderliness of the group at all times and the apparent total failure of anyone in the group to do or say anything supportive of Pickens' suggestion. In fact, one person present told Pickens to "stop this foolishness." The law enforcement officials themselves apparently took no action to restrain or to arrest Pickens after he made the statement in question. This suggests that they did not really think his statement was likely to cause any trouble. To be removed from the constitutional guaranty of free speech, Pickens' advocacy of the use of force must *both* (1) be "di-

---

1. It is evident from Judge Morrison's dissenting opinion that Pickens' first amendment claims were considered by the Texas Court of Criminal Appeals. See 466 S.W.2d at 566. Judge Morrison dissents "because of a violation of the First Amendment of the Constitution of the United States."

2. As reported in the opinion of the majority in the Texas Court of Criminal Appeals, 466 S.W.2d at 565, witness McAdams testified: " 'I was standing with my back to the doorway, and Deputy Sheriff John P. Allen was standing there by the doors with me, and I heard Mr. Pickens make the statement in a loud voice that—I don't recall the exact wording of it; it was to the effect that there aren't very many in there, and that if we all rushed them, we can get in; they can't stop us, I believe that was the ending of it.' "

Witness Allen stated: " 'And he said there is only three or four of them, and if we storm in the door, there is nothing they can do about it.' " 466 S.W.2d 563.

rected to inciting or producing imminent lawless action," *and* (2) be "likely to incite or produce such action." *Brandenburg, supra,* 395 U.S. at 447, 89 S.Ct. at 1829; Hess v. Indiana, 1973, 414 U.S. 105, 109, 94 S.Ct. 326, 38 L.Ed.2d 303. Since requirement (2) clearly was not met, and there is considerable doubt about requirement (1), I conclude that Pickens' statement constituted speech protected by the First Amendment.

Apparently the Texas trial court revoked Pickens' probation on the theory that his comment constituted an offense against the laws of Texas, and that Pickens had thereby violated a condition of his release.[3] Since Pickens' statement was within the protection of the First Amendment, his statement should not be held against him as a violation of a Texas penal statute. Otherwise, the Texas statute involved, Article 474, must be considered unconstitutional as applied to Pickens' statement.

Alternatively, the Texas trial court may have revoked Pickens' probation because his comment in and of itself violated the terms and conditions of his probation, regardless of whether the comment violated a Texas penal statute. It now seems clear that first amendment protections of freedom of expression apply to probationers,[4] except possibly where restrictions are justified by government interests similar to those described in Procunier v. Martinez, 1974, —— U.S. at ——–——, 94 S.Ct. 1800, 40 L.Ed.2d 224. In cases where some legitimate government interest would justify limitation of a probationer's first amendment freedom, such limitations should be specifically set out in the terms and conditions of probation so that the probationer is on notice of what is proscribed. In

the present case, there is no indication that Pickens was advised that the terms of his probation included curtailment of his first amendment liberties. I therefore conclude that the Texas trial court abused its discretion in revoking Pickens' probation for speech protected by the First Amendment.

3. The majority opinion by Judge Odom in the Texas Court of Criminal Appeals seems to proceed on this theory. See 466 S.W.2d at 565.

4. Pell v. Procunier, 1974, —— U.S. ——, ——, 94 S.Ct. 2800, ——, 40 L.Ed.2d ——, where Justice Stewart speaking for the Court said: " * * * a prison inmate retains those First Amendment rights that are not inconsistent

with his *status* as a prisoner or with the legitimate penological objectives of the corrections system." Also, see Procunier v. Martinez, 1974, —— U.S. ——, ——, 94 S.Ct. 1800, 40 L.Ed.2d 224 (Justice Douglas concurring, joined by Justices Brennan and Marshall) and —— – —— [94 S.Ct. 1800] (Justice Marshall concurring, joined by Justices Brennan and Douglas in Part II).