Gerald David KNIGHT, Petitioner-Appellant,

v.

W. J. ESTELLE, Director, Texas Department of Corrections, Respondent-Appellee.

No. 73–3821.

United States Court of Appeals, Fifth Circuit.

Oct. 4, 1974.

Rehearing and Rehearing En Banc Denied Dec. 5, 1974.

Phil Burleson, Robert T. Baskett, Dallas, Tex., for petitioner-appellant.

Crawford C. Martin, Robert C. Flowers, Sarah Shirley, Asst. Attys. Gen., Austin, Tex., Randall S. Boyd, Asst. Atty. Gen., Dallas, Tex., for respondent-appellee.

Before TUTTLE, WISDOM and GEE, Circuit Judges.

GEE, Circuit Judge:

Knight appeals from denial of his request for habeas corpus directed to the Texas prison system, where he is confined on sentence of life imprisonment and a revoked parole. The original sentence resulted from his rape of an eleven year old girl, the revocation of his parole from the kidnapping, forcible rape and brutalizing of a twelve year old. Reversal is said to be required because the jury in the second rape case found Knight insane at the time of the second rape and incompetent to stand trial at the time of his trial for it. We agree that the writ should not issue.

In 1953, petitioner was sentenced to life imprisonment for the first rape. In August, 1963, he was paroled subject to stated conditions, among which were securing permission of his parole officer before leaving the county or state to which he was paroled and obeying all municipal, state and federal laws. On May 14, 1965, he committed the second rape and fled the state. The circumstances of this act are hideous and apparently undisputed. As the Texas Court of Criminal Appeals observed in

its unpublished opinion on an earlier petition:

> "Neither applicant nor his attorneys deny that applicant is the one who had a forced act of intercourse with this twelve-year-old girl, nor that he took her to Jones County where he had another forced act of intercourse with her, nor that he took a tree limb and almost beat her to death in Jones County. Their sole and only contention is that applicant was legally insane at the time and, therefore, should not be held legally accountable as far as his parole revocation is concerned."

Knight was arrested because of the second rape on July 5, 1965. Eleven days later his parole was, on recommendation of the Texas parole board, summarily revoked by the Governor of Texas.[1] Just over a year later, a jury found him insane on the date of this offense, and incompetent to stand trial. In March of 1969, after lengthy hospitalization, he was adjudicated sane and transferred to prison to recommence serving his life sentence for the original crime. A 1971 habeas petition to the convicting court produced recommendations favorable to petitioner, but on review the application was denied for want of exhaustion of administrative remedies. During pendency of his motion for rehearing, the state parole board considered and denied his petition for reinstatement of his parole. Thereafter, in the summer of 1971, the Texas Court of Criminal Appeals denied his pending motion for rehearing. This petition followed, and during its pendency the Supreme Court handed down its landmark opinion in Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed. 2d 484 (1972). Thereafter, the district court entered the order here appealed from, denying the writ but concluding that the parole board's reinstatement hearing failed of due process for want of a written statement of evidence relied on and reasons for the denial. The court therefore ordered a *Morrissey* hearing or, if none were accorded, a discharge from custody.

Petitioner appeals, questioning whether his parole could constitutionally be terminated for acts which were committed during his insanity and were therefore non-volitional, and whether revocation could take place for any reason whatever at a time when he was legally insane—the analogs of insanity at offence and incompetence at time of trial in the criminal law.

 A parole revocation hearing is not a criminal proceeding.[2] Its purpose is not to assess guilt or to assign blameworthy acts to the various discrete pigeonholes of the criminal laws. Rather it is held to determine whether the attempt by parole to restore the parolee to the ranks of the carriers and remove him from those of the carried has failed. At this stage of matters, the interests of society and its safety must be first consulted, since—to take Knight for an example—it little matters to his prospective rape victim what mens rea, if any, is to accompany the act. To her, it is the same whether she is brutalized by one who does so from choice or because he cannot help it. And in either case, if the parolee has committed the physical act, the attempt to reintegrate him into society has obviously failed and the present effort to do so must be abandoned in favor of a more stringent form of custody. Whether the act which made the failure apparent was culpable or punishable is no concern of the revocation authority, which does not sit to punish. Its concern is whether the law has been obeyed, not whether it has been culpably broken. And thus it is that the same act at variance with the law may, for a variety of reasons,[3] be the occasion

---

1. Petitioner contends, and has placed in the record matter which indicates, that the basis of the parole board's recommendation was his flight from the state after the second rape.

2. Morrissey v. Brewer, 408 U.S. 471, 92 S. Ct. 2593, 33 L.Ed.2d 484 (1972).

3. Not the least of which is the difference in the standards of proof applicable: the same

of both a successful criminal defense and a parole revocation. At any rate, since the defense of insanity does not concern whether the act was committed or not, but only whether it was volitional and therefore culpable, and since parole revocation need only consider whether or not the act was committed, it follows that parole may, consistently with fundamental fairness, be revoked for acts committed while the parolee is insane.[4]

In so holding, we in no sense trench upon *Morrissey's* recognition that the parolee possesses rights in his conditional liberty of such dignity that they may not be disturbed without due process. We hold only that a new crime in all its elements, including mens rea, need not be proved for revocation. Proof of the commission of an act which, absent defenses personal to the actor such as insanity, is of sufficient gravity to be punishable as a crime amply suffices. "All that is required is that the evidence and the facts be such as to reasonably satisfy the judge that the conduct of the probationer has not been as good as required by the conditions of probation." Manning v. United States, 161 F.2d 827, 829 (5th Cir.), cert. denied, 332 U.S. 792, 68 S.Ct. 102, 92 L.Ed. 374 (1947).

▮ Knight contends as well that his parole could not constitutionally be revoked at a time when he was not competent. We are not called on to and do not decide this as a post-*Morrissey* matter. Pre-*Morrissey* it is sufficiently clear that, at any rate where the *fact* of a second rape was undisputed, no hearing at all was constitutionally required.[5] Indeed, long after the time of Knight's initial parole revocation, and about the

time of his reinstatement hearing, we were noting:

"There is respectable authority to the effect that the United States Constitution does not compel a state to provide a hearing before exercising its discretion to terminate parole." Loper v. Beto, 440 F.2d 934, 941 (5th Cir. 1971), vacated and remanded on other grounds, 405 U.S. 473, 92 S.Ct. 1014, 31 L.Ed.2d 374 (1972).

At all events, by the time *Morrissey* came down, Knight had long since been properly—by the standards of the time —deprived of that qualified liberty which bases the *Morrissey* rationale.[6] There is thus no constitutional occasion for the renewed hearing ordered by the court below, and to that extent its judgment requiring such a hearing is in error. The state, however, not only does not appeal from this part of the order but concedes that hearing. This being the case, there is no occasion for us to disturb the judgment below.

Affirmed.

TUTTLE, Circuit Judge (concurring in result):

With deference I restrict my concurrence to the decision of this Court that we affirm the trial court's action in denying the writ but requiring a *Morrissey* type hearing by the parole board. More especially, I do not agree that we should state in general terms that ". . . parole revocation need only consider whether or not the act was committed . . ." regardless of attendant circumstances.

It seems to me that *Morrissey* clearly states that the determination of a violation of a parole *in fact* is only "[t]he

---

evidence which does not convince by the criminal test of eliminating reasonable doubt may easily clear the lower bar of preponderance. Pickens v. Texas, 497 F.2d 981 (5th Cir. 1974) ; United States v. Garza, 484 F. 2d 88 (5th Cir. 1973) ; United States v. Carrion, 457 F.2d 808 (9th Cir. 1972).

4. Presumably such a one would be hospitalized, as would any other prisoner who became insane while in custody.

5. Knight makes no contention that the state failed to meet its statutory procedural requisites. Thus no question of denial of equal protection is presented. See, Loper v. Beto, supra at 940–942.

6. By its own terms, *Morrissey* is prospective only in application. 408 U.S. 471, 490, 92 S.Ct. 2593, 2604, 33 L.Ed.2d 484, 499.

first step in a revocation decision . . ." 408 U.S. 471, 479, 92 S.Ct. 2593, 2599. The next step requires that "[t]he parolee must have an opportunity to be heard and to show, if he can, that he did not violate the conditions, or, if he did, that circumstances in mitigation suggests that the violation does not warrant revocation." *Morrissey, supra* at 488, 92 S.Ct. at 2603. The parolee's mental capacity at the time of the commission of the act charged as a violation of the terms of parole must surely be one circumstance to be considered in the ultimate decision, since conformity to the conditions of parole necessarily depends largely on volition.

It is true that in dealing with the appellant's constitutional claim, the opinion states that it deals only with the pre-*Morrissey* requirements. I think it must be made clear that what is stated as to the nature of parole revocation hearings in general is not to be taken as an advisory opinion as to what may be considered post-*Morrissey*.