**Martin B. STEINBERG, Petitioner-Appellant,**

v.

**POLICE COURT OF ALBANY, NEW YORK, et al., Respondents-Appellees.**

No. 78–3531.

United States Court of Appeals, Sixth Circuit.

Submitted Oct. 8, 1979.

Decided Dec. 14, 1979.

---

Martin B. Steinberg, pro se.

Patrick H. Molloy, U. S. Atty., John M. Compton, Asst. U. S. Atty., Lexington, Ky., for respondents-appellees.

Before EDWARDS, Chief Judge, MERRITT, Circuit Judge, and PHILLIPS, Senior Circuit Judge.

HARRY PHILLIPS, Senior Circuit Judge.

Petitioner-appellant Martin B. Steinberg, a prisoner in the Federal Correctional Institute, Lexington, Kentucky, appeals from the district court's denial of his application for a writ of habeas corpus. We affirm.

## I

In February 1974, the United States District Court for the Northern District of Texas sentenced petitioner-appellant Steinberg to a term of seven years' imprisonment. In May 1976, Steinberg was paroled.

A special condition of the parole required Steinberg to "seek outpatient mental therapy while on parole." After his release, Steinberg was treated at Jackson Memorial Hospital in Miami, Florida, first by the Crisis Intervention unit and later by the Lithium Group Clinic. As part of his treatment program, he received medication.

In December 1976, Steinberg left Miami and went to Orlando, Florida, where he rented an automobile. He drove to Albany, New York, where he was arrested for possession of the car, which the rental agency had reported stolen when Steinberg failed to return it. Steinberg entered a plea of guilty to a charge of unauthorized use of a motor vehicle, a lesser offense than possession of a stolen vehicle.

Subsequently, Steinberg was transferred to federal custody. The United States Parole Commission found that he had violated his parole by leaving the Miami area without permission, by ceasing to participate in the Lithium Clinic's outpatient treatment program, and by using a motor vehicle without authorization. The Commission found that the third violation constituted new criminal conduct. Applying re-parole guidelines, 28 C.F.R. § 2.21, the Commission revoked Steinberg's parole and specified that he must serve 24 to 32 months before becoming eligible for re-parole.

Steinberg attempted unsuccessfully to withdraw his state court guilty plea and to have the decision of the Parole Commission reversed. His application for a writ of habeas corpus was denied by the district court and he appeals.

## II

Steinberg asks for habeas corpus relief from two different judgments. First, he asks this court to overturn his state court conviction on the ground that it is based on an invalid guilty plea. Second, he argues that the Parole Commission's judgment revoking his parole is arbitrary and capricious because it is based on the invalid state court conviction.

Steinberg says his failure to take his medication in December 1976, caused him to lose contact with reality. He claims to have no memory of why he rented a car and went to Albany or what he did before his arrest. Therefore, he contends that he could not be held criminally responsible for stealing the car. Moreover, he says, he was mentally incompetent to plead guilty and his guilty plea, therefore, was invalid. Finally, he argues that he entered a plea of guilty in return for a parole officer's unfulfilled promise that his parole would not be revoked and says that this made his plea involuntary. He now wants to withdraw the guilty plea and stand trial in the Police Court.

Steinberg's purpose in seeking to withdraw the guilty plea is to undercut his parole revocation. Implicit in his pro se request for habeas corpus relief from the Commission's decision is the argument that the alleged errors in his state court conviction invalidate his parole revocation. The premise of that argument is that, if Steinberg could not be held criminally responsible for stealing the car, neither could he be found to have violated his parole. We reject this premise and, accordingly, affirm.

## III

We note initially that Steinberg's challenge to the decision to reincarcerate him must fail. The Commission gave three reasons for revoking parole: Steinberg stopped participating in his out-patient treatment program; he left the jurisdiction without permission; and he stole the car. Under the Parole Commission and Reorganization Act, 18 U.S.C. § 4214(d)(1) (1976), it is clear that the Commission may revoke parole if it finds that the parolee has violated a condition of his parole. To justify revocation, it is not necessary that a violation be criminal. *Clark v. Stevens*, 291 F.2d 388 (6th Cir. 1961); *Lewis v. United States Parole Commission*, 448 F.Supp. 1327, 1330 (E.D.Mich.1978). *See Mack v. McCune*, 551 F.2d 251 (10th Cir. 1977). Steinberg's voluntary decision to cease taking his medication and participating in his out-patient treatment program independently was sufficient to justify his parole revocation. *See Clark v. Stevens*, 291 F.2d 388, 389 (6th Cir. 1961).

The Commission's order that Steinberg serve 24 to 32 months before becoming eligible for re-release presents a more difficult question. 28 C.F.R. § 2.21(a) specifies that if revocation is based on an administrative (non-criminal) parole violation, the parolee ordinarily will be eligible for re-parole within 16 months of the revocation. However, 28 C.F.R. § 2.21(b) states that, if the violation is criminal, eligibility for re-parole is to be determined according to the 28 C.F.R. § 2.20 guidelines for original parole eligibility. Apparently the application of these more stringent guidelines was the basis of the Parole Commission's determination that Steinberg must serve 24 to 32 additional months before becoming eligible for re-parole. The duration of Steinberg's reincarceration thus seems to depend directly on the state court conviction.

Overturning the state conviction would not necessarily entitle Steinberg to reconsideration of his reincarceration period. 28 C.F.R. § 2.21(b)(1) states that "New criminal conduct may be determined either by a new federal, state, or a local conviction or by an independent finding by the Commission at revocation hearing." This comports with the general rule that the Parole Commission may find a parole violation despite

the parolee's acquittal of all criminal charges based on the same conduct. *See Mack v. McCune*, 551 F.2d 251 (10th Cir. 1977). Thus, only if Steinberg's lack of mental competence excused both his parole violation and his criminal conduct would he be entitled to habeas corpus relief.

■ Therefore, we must address the question of whether a parolee whose conduct arguably violates his parole may defend against revocation on the ground that his lack of mental competence made his acts non-volitional. In other words, we must decide whether insanity is a defense in a parole revocation hearing. We hold that it is not.

## IV

Parole revocation proceedings answer two questions: whether a violation has occurred and, if so, what is to be done about it. As the Supreme Court said in *Morrissey v. Brewer*, 408 U.S. 471, 479–80, 92 S.Ct. 2593, 2599, 2600, 33 L.Ed.2d 484 (1972):

The first step in a revocation decision thus involves a wholly retrospective factual question: whether the parolee has in fact acted in violation of one or more conditions of his parole. Only if it is determined that the parolee did violate the conditions does the second question arise: should the parolee be recommitted to prison or should other steps be taken to protect society and improve chances of rehabilitation? The first step is relatively simple; the second is more complex. The second question involves the application of expertise by the parole authority in making a prediction as to the ability of the individual to live in society without committing antisocial acts. This part of the decision, too, depends on facts, and therefore it is important for the board to know not only that some violation was committed but also to know accurately how many and how serious the violations were. Yet this second step, deciding what to do about the violation once it is identified, is not purely factual but also predictive and discretionary.

There is no place in the fact-finding phase of a revocation hearing for an insanity defense. Parole is granted on the understanding that the parolee will observe conditions which are designed to guide him into constructive development and restrain antisocial propensities. *See Morrissey v. Brewer*, 408 U.S. 471, 478, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). A violation demonstrates that the parolee is either unwilling or unable to observe those conditions. It may indicate that parole is not a suitable mode of correctional treatment in his case, *United States v. Manfredonia*, 341 F.Supp. 790, 794 (S.D.N.Y.), aff'd., 459 F.2d 1392 (2d Cir.), *cert. denied*, 409 U.S. 851, 93 S.Ct. 61, 34 L.Ed.2d 93 (1972), or that the attempt to reintegrate the parolee into society has failed. What is important is whether the parolee violated his parole, not whether he did so voluntarily. At this fact-finding stage, the Commission's "concern is whether the law has been obeyed, not whether it has been culpably broken." *Knight v. Estelle*, 501 F.2d 963 (5th Cir. 1974), *cert. denied*, 421 U.S. 1000, 95 S.Ct. 2399, 44 L.Ed.2d 668 (1975).

It is only when the Commission reaches the second, or dispositional, stage of the revocation hearing that volition becomes relevant. In deciding what steps to take to protect society and improve the parolee's chances of rehabilitation, the Commission needs to know whether the violation was voluntary. Reincarceration is a means not only of restraining parole violators, but, also, of enforcing the threat that mandates observance of parole conditions. Where a parole violation is voluntary, the need to maintain the credibility of the threat may justify reincarceration even though the conduct itself poses little danger to society. By contrast, where a parole violation is involuntary, enforcement leverage becomes irrelevant and disposition must depend on the need to protect society and to treat the parolee.

That volition is relevant in the dispositional stage of a parole revocation hearing does not, however, mean that lack of volition is a defense to revocation. As the Supreme Court has noted, deciding what to

do about a parole violation "involves the application of expertise by the parole authority" and is "predictive and discretionary." *Morrissey v. Brewer*, 408 U.S. 471, 480, 92 S.Ct. 2593, 2599, 33 L.Ed.2d 484 (1972). The Commission must balance the lack of culpability against the need to protect society and rehabilitate the parolee. Under appropriate circumstances it may be that modifying parole conditions or referring the parolee to a residential community treatment center (*see* 18 U.S.C. § 4214(d)) is an adequate response to a non-volitional parole violation. However, that decision is for the Parole Commission, not the courts. A court may not interfere unless it is convinced that the Parole Commission's disposition of the parolee's case was an abuse of discretion. *Dye v. United States Parole Commission*, 558 F.2d 1376 (10th Cir. 1977); *Clark v. Stevens*, 291 F.2d 388 (6th Cir. 1961).

■ Even if the state court had acquitted Steinberg as insane, we could not find that the Parole Commission abused its discretion by revoking Steinberg's parole and ordering him to serve 24 to 32 months before becoming eligible for re-parole. There is no doubt that he ceased participating in his outpatient treatment program, left Miami without permission and failed to return the rental car to the dealer. Even if it be assumed that he was not criminally responsible when he left Miami and drove to New York in the rented car, this does not lessen the car owner's loss nor the danger that, if not restrained, Steinberg might experience another mental lapse and commit a more serious crime. Under these circumstances, it was not an abuse of discretion for the Commission to remand Steinberg to prison supervision where his treatment can be enforced and his actions restrained. Accordingly, we hold that the district court properly denied Steinberg's petition for habeas corpus relief from his parole revocation. *Knight v. Estelle*, 501 F.2d 963 (5th Cir. 1974), *cert. denied*, 421 U.S. 1000, 95 S.Ct. 2399, 44 L.Ed.2d 668 (1975).

## V

■ We further hold that Steinberg is not entitled to habeas corpus relief from his state court conviction. He has not shown that he is in the actual or constructive custody of the State of New York, nor that he is subject to any continuing disability that originated with his state court conviction.

In order to maintain a habeas corpus action, the petitioner must be "in custody." 28 U.S.C. §§ 2241(c)(3), 2254(a), 2255; *Carafas v. LaVallee*, 391 U.S. 234, 238, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968). His custody must be the result of the respondent's action from which he seeks habeas corpus relief. *Brown v. Wainwright*, 447 F.2d 980 (5th Cir. 1971). However, the Supreme Court has given the custody requirement a liberal construction, and it is not necessary that the petitioner be in physical control of the respondent. It is enough that the imprisoning sovereign is the respondent's agent, *see Braden v. 30th Judicial Court of Kentucky*, 410 U.S. 484, 498–99, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973); that his liberty is restrained by the respondent's parole conditions, *Jones v. Cunningham*, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963); or that he can point to some continuing collateral disability which is the result of the respondent's action, *Carafas v. LaVallee*, 391 U.S. 234, 237–40, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968). A petitioner who is neither in the respondent's actual or constructive custody nor disabled by any collateral consequence of the respondent's action is not entitled to habeas corpus relief.

Steinberg is not entitled to habeas corpus relief. His present confinement is the result of his parole violation, not his state conviction. He is not in actual or constructive custody of the Police Court of Albany, New York. Nor is the Commission's requirement that Steinberg serve 24 to 32 additional months before he becomes eligible for re-parole a collateral consequence of his state court conviction. 28 C.F.R. § 2.21(b)(1) allows the Parole Commission to find that the parolee's behavior constituted new criminal conduct despite a state court

acquittal, and we have held that Steinberg's alleged lack of criminal responsibility would not preclude such an independent finding. Even if the state court had acquitted Steinberg as insane, the disposition made by the Commission would not have constituted an abuse of discretion. Under these circumstances, Steinberg has not shown that he is in the actual or constructive custody of the Albany Police Court. It follows that he is not entitled to habeas corpus relief. *See Brown v. Wainwright*, 447 F.2d 980 (5th Cir. 1971).

Accordingly, the judgment of the district court dismissing Steinberg's habeas corpus petition is affirmed.