[Crim. No. 18995. First Dist., Div. Three. Jan. 28, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
ROGER BREAUX, Defendant and Appellant.

**COUNSEL**

Mary L. Brutocao, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Robert R. Granucci and Clifford K. Thompson, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**SCOTT, J.**—Appellant Roger Breaux was convicted on his plea of guilty of violation of Penal Code section 459, second degree burglary, in April of 1976. Imposition of sentence was suspended and appellant was placed on probation for a period of three years. A condition of probation required that appellant undertake and maintain a psychiatric treatment program.

The facts giving rise to the burglary conviction suggest that appellant was a voyeur. Appellant had entered a motel room in the early morning hours, where he was discovered by a male and a female occupant kneeling beside the bed with his head under the covers. Appellant denied entering the motel room to steal and insisted that all he was, was a "peeping tom."

While still on probation, in September 1978, appellant was held to answer again on a charge of burglary. As a result of this alleged offense, appellant's probation was revoked and he was sentenced to prison for the term prescribed by law. At a probation revocation hearing, it developed that while on probation appellant had been arrested approximately 11 times for incidents involving peeking in the windows of motels and attempting to obtain entrance. Appellant was also held to answer on a burglary charge occurring subsequent to the burglary charge which was the basis for the revocation of his probation. It appears that all of appellant's criminal conduct constituted acts of voyeurism.

At the motion to revoke probation, the only persons to testify were Dr. Roland Levy, a psychiatrist appointed by the court, and appellant. Dr. Levy testified that he had examined police reports, the probation report and a psychiatric examination by Dr. David Cook on the previous offense, had reviewed the preliminary hearing transcript, and had interviewed appellant in the county jail. He stated that appellant had told him that he had had a problem known as voyeurism since he was around 14 years old, which manifested itself by his efforts to view nude women or couples engaging in intercourse. He chose motels because he would be more apt to view sexual activity in motel rooms and would be less likely to be reported or encounter a gun. Although he usually confined himself to looking through windows, if a window was open or a door unlocked, he would enter the room to get a better look. He had never stolen anything in these instances. Dr. Levy was of the opinion that at the time of the September 1978 burglary, appellant was insane in that, as a result of mental disease or defect, he lacked substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law. (See *People v. Drew* (1978) 22 Cal.3d 333 [149 Cal.Rptr. 275, 583 P.2d 1318].)

█ Appellant's principal contention on appeal is that the order revoking probation on the basis of the probationer's course of conduct,

which is a product of insanity, is invalid. As we hereinafter discuss, we conclude that insanity is not a defense to an act constituting a violation of probation. We further conclude that the court in the instant case did not abuse its discretion in finding appellant in violation of his probation and sentencing appellant to prison.

Initially, the People contend that we need not reach the issue of whether insanity is a defense to probation violation since there was evidence of violation of other conditions of probation not related to the acts of voyeurism. Penal Code section 1203.2 provides in relevant part that "the court may revoke and terminate such probation if the interests of justice so require and the court, in its judgment, has reason to believe from the report of the probation officer or otherwise that the person has violated any of the conditions of his probation, has become abandoned to improper associates or a vicious life, or has subsequently committed other offenses, regardless whether he has been prosecuted for such offenses." These grounds are, in effect, made conditions upon which every order of probation is granted. (*People* v. *Lippner* (1933) 219 Cal. 395, 399 [26 P.2d 457]; *People* v. *Perez* (1966) 243 Cal.App.2d 528, 532 [52 Cal.Rptr. 514].) The People then point to evidence that could in their opinion lead to the conclusion that appellant had not maintained a program of psychiatric treatment, and further, that he had taken money from the motel room, an act to which his insanity defense would not apply, which gave rise to the burglary charge resulting in the revocation of his probation.

We conclude, however, that the People may not range so far in their effort to uphold the order. The court in *People* v. *Vickers* (1972) 8 Cal.3d 451, 458 [105 Cal.Rptr. 305, 503 P.2d 1313], held that due process requires a probationer be given the minimum requirements set forth in *Morrissey* v. *Brewer* (1972) 408 U.S. 471 [33 L.Ed.2d 484, 92 S.Ct. 2593] before probation is revoked. They include among other things notice to the probationer of the claimed violations of probation, an opportunity to be heard in person on these violations, and a statement by the factfinder as to the evidence relied on and the reasons for revoking. (408 U.S. at pp. 488-489 [33 L.Ed.2d at pp. 498-499].) Here the only ground upon which the motion to revoke was based was the offense committed on February 21, 1978. The hearing was confined to evidence of appellant's mental state in committing the admitted acts of voyeurism. The People did not argue that other grounds for revocation existed, and thus appellant did not have the opportunity to meet an ar-

gument on other grounds. Under these conditions, revocation for the above reasons suggested by the People would violate the due process requirements set forth above.

Appellant had no notice that a violation of the condition that pertained to psychiatric treatment was claimed. He, therefore, could not be expected to present evidence on the question or meet an argument that was never made. The statement of reasons, taken as a whole, indicates that the trial judge did not decide there was probable cause to think appellant had stolen from the motel room since he specified violation of Penal Code section 647, subdivision (h)[1] as the offense the evidence most strongly suggested.

The acts of voyeurism committed by appellant were the conduct upon which the trial court based its revocation of probation. We are required, therefore, to determine whether those acts of voyeurism, which were a product of insanity, can lawfully form the basis for the revocation of appellant's probation.

No California case has been cited or found which considers whether insanity is a defense to revocation of probation or parole. Other jurisdictions have considered the question and have uniformly held that insanity is not a defense. (*Knight* v. *Estelle* (5th Cir. 1974) 501 F.2d 963, 965, cert. den., 421 U.S. 1000 [44 L.Ed.2d 668, 95 S.Ct. 2399]; *United States* v. *O'Sullivan* (S.D.N.Y. 1976) 421 F. Supp. 300, 302; *State* v. *Johnson* (1973) 9 Wn.App. 766 [514 P.2d 1073, 1076]; *Trumbly* v. *State* (Alaska 1973) 515 P.2d 707, 708-709; *State* v. *O'Meal* (1977) 116 Ariz. 307 [569 P.2d 249]; *People* ex rel. *Newcomb* v. *Metz* (1978) 64 App.Div.2d 219 [409 N.Y.S.2d 554]; *State* v. *Oyler* (1968) 92 Idaho 43 [436 P.2d 709].) The courts reason that the purpose of revocation is to protect the public and hopefully, to further rehabilitation, and therefore the purpose of a revocation hearing is not to determine legal responsibility. The statements of the court in *Knight* v. *Estelle, supra,* 501 F.2d at pages 964-965 are illustrative: "A parole revocation hearing is not a criminal proceeding. Its purpose is not to assess guilt or to assign blameworthy acts to the various discrete pigeonholes of the criminal laws. Rather it is held to determine whether the attempt by parole to restore the parolee to the ranks of the carriers and remove

[1]Penal Code section 647, subdivision (h) provides: "Every person who commits any of the following acts is guilty of disorderly conduct, a misdemeanor:...(h) Who, while loitering, prowling, or wandering upon the private property of another, in the nighttime, peeks in the door or window of any inhabited building or structure located thereon without, visible or lawful business with the owner or occupant thereof."

him from those of the carried has failed. At this stage of matters, the interests of society and its safety must be first consulted, since—to take Knight for an example—it little matters to his prospective rape victim what mens rea, if any, is to accompany the act. To her, it is the same whether she is brutalized by one who does so from choice or because he cannot help it. And in either case, if the parolee has committed the physical act, the attempt to reintegrate him into society has obviously failed and the present effort to do so must be abandoned in favor of a more stringent form of custody. Whether the act which made the failure apparent was culpable or punishable is no concern of the revocation authority, which does not sit to punish. Its concern is whether the law has been obeyed, not whether it has been culpably broken. And thus it is that the same act at variance with the law may, for a variety of reasons, be the occasion of both a successful criminal defense and a parole revocation. At any rate, since the defense of insanity does not concern whether the act was committed or not, but only whether it was volitional and therefore culpable, and since parole revocation need only consider whether or not the act was committed, it follows that parole may, consistently with fundamental fairness, be revoked for acts committed while the parolee is insane."

California, too, adheres to the distinction between a criminal proceeding and a revocation proceeding and for the same reasons. The Supreme Court in deciding that probation could be revoked despite acquittal of the criminal charge quoted *People* v. *Andre* (1974) 37 Cal.App.3d 516, 520-521 [112 Cal.Rptr. 438], as follows: "'Probation and parole are granted in the hope and expectation that the conditional release, under supervision, will better serve to rehabilitate a defendant than would supervised incarceration. The court, or the paroling authority, need not wait until the defendant proves, by new acts of criminality, that the hope and expectation were unfounded. *Acts short of criminality, or evidence which leaves a criminal violation still uncertain, may well, in the judgment of the court or authority, indicate that the hoped for rehabilitation is on the road to complete failure* and that a more restrictive process is required both to protect society and to assist the defendant toward ultimate rehabilitation.'" (*In re Coughlin* (1976) 16 Cal.3d 52, 59-60 [127 Cal.Rptr. 337, 545 P.2d 249].)

It is clear from Penal Code section 1203.2, subdivision (a) that the Legislature does not require that an act be a violation of a criminal statute to warrant revocation of parole. "It is within the sound discre-

tion of the court to revoke probation whenever the conduct of the probationer indicates that he has failed to reestablish himself as a worthy citizen of the state, or has demonstrated by his conduct that he is unfit to be at large, and that his continued freedom will impair, menace or jeopardize the peace or morals of society." (*People v. Martin* (1943) 58 Cal.App.2d 677, 684 [137 P.2d 468] (conc. opn. of White, J.); accord, *Miller v. Oberhauser* (9th Cir. 1961) 293 F.2d 29, 32.)

We conclude, therefore, that the fact that an act constituting a probation violation was committed while the defendant was insane is not a defense to a probation violation charge. Our inquiry, however, does not end with this determination. The Supreme Court in *Morrissey v. Brewer* recognized that a revocation decision has two analytically distinct components: "The first step in a revocation decision thus involves a wholly retrospective factual question: whether the parolee has in fact acted in violation of one or more conditions of his parole. Only if it is determined that the parolee did violate the conditions does the second question arise: should the parolee be recommitted to prison or should other steps be taken to protect society and improve chances of rehabilitation?" (408 U.S. at pp. 479-480 [33 L.Ed.2d at p. 493].) Based on this premise, the courts cited above which have considered the question have all held that the mental state of the defendant, though not a defense, is relevant to the decision to revoke. (See e.g., *Trumbly v. State, supra,* 515 P.2d at pp. 708-709.) "Fundamental fairness—the touchstone of due process—requires that the trial court consider whether the appellant knew the difference between right or wrong at the time the alleged violations of probation occurred, not as a defense to the alleged violations, but to make it possible for the trial court to have all the information necessary to make the judgment justice demands." (*State v. Johnson, supra,* 514 P.2d at p. 1076.) Based on a failure to admit psychiatric evidence or a record unclear as to whether proper consideration was given to the testimony of insanity, the courts in the following cases have remanded the case for reconsideration: *State v. Johnson, supra; Trumbly v. State, supra; State v. Oyler, supra,* 436 P.2d 709.

A person's sanity or the fact that he suffers from a mental disease or defect is relevant for the court to consider in determining whether a probationer's probation should be revoked or modified.[2] The court here

---

[2]It is unnecessary that we determine whether subdivision (2) of the American Law Institute's test for legal insanity should be adopted in California, an issue that was also briefed in this case. In *People v. Drew* (1978) 22 Cal.3d 333, 345 [149 Cal.Rptr. 275, 583 P.2d 1318], the Supreme Court discarded California's modified M'Naghten rule in

admitted evidence of appellant's mental state and considered it in determining that probation should be revoked. Since the court received and considered such evidence, our concern is limited to whether, under the circumstances, the revocation constituted an abuse of discretion.

Although a court may not act arbitrarily or capriciously in revoking probation (see, e.g., *People* v. *Buford* (1974) 42 Cal.App.3d 975 [117 Cal.Rptr. 333]), its discretion in this matter is very broad (*In re Coughlin, supra,* 16 Cal.3d 52, 56). No abuse is shown in the instant case. Dr. Levy was of the opinion that there was some danger to appellant and to others in his behavior, since he would enter the rooms of people he wanted to observe. He was of the view that since appellant had been in custody, he had been more motivated to do something about his voyeurism. Furthermore, as the court observed in ordering the revocation, there was ample evidence that appellant would continue to violate Penal Code section 647, subdivision (h), which would merit revocation of probation.

Judgment is affirmed.

White, P. J., and Feinberg, J., concurred.

---

favor of following the standard formulated by the American Law Institute (ALI), which provides: "'A person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he lacks substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law.'" (22 Cal.3d at p. 345.) Under this standard, Dr. Levy was of the opinion that appellant was insane.

In adopting subdivision (1) of the ALI test, the court expressly reserved for a later occasion acceptance or rejection of subdivision (2) of the ALI definition. Subdivision (2), sometimes referred to as the "caveat," declares: "As used in this Article, the terms 'mental disease or defect' do not include an abnormality manifested only by repeated criminal or otherwise anti-social conduct."

In the event subdivision (2) of the ALI test were adopted in California, an argument could be made that an act of voyeurism falls within that definition, and as such does not constitute insanity as a defense to a criminal charge, in which event it would not, of necessity, constitute a defense to a probation violation charge. Dr. Levy testified that he was of the opinion that appellant was not insane if California adopted subdivision (2) of the ALI definition of insanity. However, even if appellant is sane, were subdivision (2) of the ALI definition to be adopted, it would be necessary in a probation violation hearing for the court to consider appellant's voyeurism in determining whether to revoke or modify his probation.