[No. 48217–9. En Banc. June 24, 1982.]

MICHAEL PIERCE, *Respondent,* v. THE DEPARTMENT OF SOCIAL AND HEALTH SERVICES, *Appellant.*

*Kenneth O. Eikenberry, Attorney General,* and *Carol Horan Rainey* and *Mark J. Dynan, Assistants,* for appellant.

*Millard Rowlette,* for respondent.

PEARSON, J.—This is a habeas corpus proceeding in which the trial court ruled that petitioner's Fourteenth

Amendment due process rights were violated during revocation proceedings when the Board of Prison Terms and Paroles (Board) hearing officer refused to order a competency evaluation when there was "sufficient information . . . to call into question petitioner's competency when applying standards applicable to a criminal proceedings."[1]

The trial court reversed the order of the Board revoking petitioner's parole and directed the Board to conduct a new final revocation hearing after having petitioner's competency evaluated. The stated purpose of the competency evaluation was to determine "if the parolee is able to assist counsel in his defense and able to understand the nature of the proceedings against him." The State has appealed this order, challenging the constitutional grounds on which it was based and contending the Board has no statutory authority to order a competency evaluation or to cause commitment for treatment if petitioner is found to be incompetent.

We affirm the trial court's order requiring that petitioner's competency be evaluated prior to holding a new final revocation proceeding. However, we clarify the ruling both as to grounds and purpose of such an evaluation.

The trial court's order is unclear in its direction to the Board in the event petitioner is found to be incompetent. To that extent the order requires clarification. The precise issue raised is whether Fourteenth Amendment due process requires that a parolee be competent at the parole revocation hearing.

The issue is one of first impression in Washington, and the United States Supreme Court has not yet considered it. Petitioner bases his constitutional argument on *Morrissey v. Brewer*, 408 U.S. 471, 33 L. Ed. 2d 484, 92 S. Ct. 2593 (1972), which held *inter alia* that due process required a parolee to be given notice and a hearing before his parole could be revoked. Petitioner argues that notice and a hear-

---

[1]The quoted finding was stipulated to by the parties for the purpose of these proceedings.

ing are meaningless guaranties to a parolee who is unable to understand the nature of the proceedings or assist his counsel in preparing and conducting a defense.

Petitioner also claims a statutory right emanating by analogy from RCW 10.77.050, which provides that no incompetent person shall be tried, convicted, or sentenced. Support for this argument is provided in *State v. Campbell,* 95 Wn.2d 954, 632 P.2d 517 (1981), where this court held, basing its reasoning on RCW 10.77.050, that a court has no jurisdiction to alter the probation of a person committed to a hospital for competency evaluation. Application of this rule to a parolee would deny jurisdiction over an incompetent parolee to the Board.

The State contends such a holding would deny the Board the means of effectively exercising its duty to supervise parolees for the protection of society. To carry out such duty, the State argues, requires authority in the Board to revoke the parole of an incompetent person. Furthermore, the State contends the competency provision of RCW 10.77 (the criminal insanity statute) relates only to commitment ordered by courts in connection with the trial, conviction, or sentencing of offenders, and is not applicable to parolees. The contention is that the Board is without express statutory authority to commit an alleged parole violator to a mental institution for a competency evaluation or for mental health treatment, and civil commitment proceedings under RCW 71.05, if usable by the Board, do not furnish a sufficiently speedy remedy, as public safety may demand. The State argues against granting implied authority to the Board to utilize the criminal competency provisions of RCW 10.77 because the Board may be required under those provisions to release a parolee under circumstances inconsistent with its statutory duties to supervise parolees and protect public safety.

The State's position is that this court should hold Fourteenth Amendment due process is satisfied where the presumptively incompetent parolee is represented by counsel, and the hearing officer "considers" the parolee's compe-

tency as it affects the disposition of his case.

We hold that: (1) The Board is not deprived of jurisdiction over a parolee who is incompetent or whose competency is suspect. (2) In dealing with a potentially incompetent parolee in connection with a parole revocation proceeding, the Board has implied authority to order competency evaluations. (3) In dealing with a potentially incompetent parolee, due process requires the Board or hearing officer (a) to order a competency evaluation prior to the final revocation hearing of any parolee whose competency is called into question under standards applicable to criminal proceedings; (b) to provide such a parolee with counsel; (c) to consider parolee's competency in determining the appropriate disposition; (d) and to comply in all other respects with the requirements of due process of *Morrissey v. Brewer, supra.* (4) As a condition of continued parole appropriate to an incompetent parolee, the Parole Board may require the parolee to avail himself of the voluntary commitment procedures of RCW 71.05 or revoke the parole and recommend that the secretary of corrections and the secretary of social and health services transfer him to a state mental institution, pursuant to RCW 72.68.031.

Accordingly, the trial court's order requiring a competency evaluation for petitioner is affirmed, but insofar as such order may be interpreted to deprive the Board of jurisdiction to deal with incompetent parolees or hold revocation hearings with reference to such a parolee, the order is modified.

The Board of Prison Terms and Paroles is a statutory body created by, and whose powers are defined by, RCW 9.95. The Board has authority to release a convicted person from prison on parole. RCW 9.95.110. The Board "may return such person to the confines of the institution from which he was paroled, at its discretion". The Board's discretion to revoke parole and return a person to prison is not absolute. Due process requires that a parolee is entitled to a fair and impartial hearing before revocation of his parole. *Morrissey v. Brewer, supra; In re Akridge,* 90 Wn.2d 350,

581 P.2d 1050 (1978). In appropriate cases, the parolee is entitled to be represented by counsel at a revocation hearing. *Gagnon v. Scarpelli*, 411 U.S. 778, 36 L. Ed. 2d 656, 93 S. Ct. 1756 (1973). These due process rights are embodied in the statutory procedures for parole revocation. RCW 9.95.120–.126. A parolee accused of violation of his parole, other than conviction of a felony or misdemeanor, is entitled to a fair and impartial hearing before the Board. RCW 9.95.120. (In addition, a parolee is entitled to explain before the Board why a subsequent conviction should not result in parole revocation. *In re Akridge, supra* at 353.) Any alleged parole violator is entitled to counsel at a revocation hearing. RCW 9.95.122. Parole may be revoked only if the Board is satisfied that the alleged violation of parole has been proved by a preponderance of the evidence and that the violation constitutes sufficient cause for revocation. RCW 9.95.125. *Standlee v. Smith*, 83 Wn.2d 405, 518 P.2d 721 (1974).

■■ Neither the statutes nor the cases defining the due process rights of parolees in revocation proceedings expressly address the issue of an incompetent parolee. We find no indication in the statutes that the Legislature intended the Board to lose jurisdiction over a parolee whose competency is called into question. Parole is an established variation on imprisonment of convicted criminals. Its purpose is to reintegrate such persons into society and at the same time to alleviate the cost of keeping those persons in prison. *Morrissey v. Brewer, supra* at 477. To achieve this end, while protecting society from further antisocial acts, the Board is vested with considerable authority over parolees. It may subject parolees to a wide range of restrictions and disabilities. *State v. Fain*, 94 Wn.2d 387, 617 P.2d 720 (1980). Infractions of parole conditions, although not amounting to criminal acts, may result, at the Board's discretion, in revocation and reconfinement. It is inconsistent with the purposes of the parole system that the Board's jurisdiction over the parolee should end when the parolee's competence is called into question. Incompetence is a seri-

ous threat to the parolee's reintegration into society. An incompetent parolee has a particular need for the control and supervision provided by the Board. We find nothing in the statute to suggest that the Board loses jurisdiction when a parolee's competence is called into question. The Board may therefore proceed with a parole revocation hearing even when a parolee's competence is in question.

■ However, the parolee's competence or incompetence is not wholly irrelevant to such a hearing. A parole revocation hearing is a 2-step process. *Morrissey,* at 479–80; *State v. Johnson,* 9 Wn. App. 766, 514 P.2d 1073 (1973). First, the Board must consider the wholly factual question of whether the parolee acted in violation of parole conditions. Second, if a violation is established, the Board must determine whether the parolee should be recommitted to prison or whether other steps should be taken to protect society and improve the chances of rehabilitation. *Morrissey v. Brewer, supra.* We hold that due process does not require that the parolee be competent at the first or fact–finding step. But due process does require that the Board consider the parolee's competence or lack thereof in determining the appropriate disposition in the event a violation of parole conditions is established.

In determining the nature of process due a parolee, the United States Supreme Court recognized that parole revocation proceedings are quite different from criminal prosecution, and thus the "full panoply of rights due a defendant in such a proceeding does not apply to parole revocations." *Morrissey,* at 480. The Court in *Morrissey* began its determination of what process is due by identifying the competing interests involved in the parole revocation procedure. On the one hand is the parolee's interest in his liberty. Although the parolee's liberty is conditional, it "includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee". *Morrissey,* at 482. On the other hand is the State's interest in the rehabilitation of the parolee while ensuring that he commits no additional antisocial acts. The Court then deter-

mined that due process requires a revocation hearing by considering the effect of such a hearing on these competing interests. The Court concluded that an informal revocation hearing significantly protected the parolee's interests without in any way impairing the State's interests. *Morrissey,* at 484.

A similar analysis convinces us that due process does not require the parolee to be competent at parole revocation proceedings. We reach this conclusion by considering the effect on the respective interests of the parolee and the State of requiring a determination of competency as a due process requirement of revocation proceedings. Such a requirement might well be in the parolee's interest. In the absence of such a requirement, there would exist the possibility of circumstances within the parolee's knowledge which could prove him innocent of the parole violation but which because of his mental condition he could not raise as a defense. On the other hand, such a requirement would be inimical to the interests of the State. The incompetence of a parolee seriously threatens the parolee's successful rehabilitation and might well increase the likelihood of further antisocial acts. The requirement that the parolee be competent at revocation proceedings would obviate the Board's means of exercising its authority over the parolee at a time such authority becomes essential. In effect, the Board would be forced to abandon the parolee until he regained competence; its responsibilities to both the parolee and society would be ignored. Consequently, the State's interest in proceeding against an incompetent parolee is very strong.

We are mindful that if a parolee is incompetent during revocation proceedings, a measure of uncertainty is injected into the fact–finding procedure. This arises from the possibility that the incompetent parolee might possess information which would prove him innocent but which he is unable to communicate to his attorney or to the Board. However, this measure of uncertainty is not inconsistent with the parole revocation procedures. Violation of condi-

tions of parole need not be established beyond reasonable doubt. All that is required is that the Board be satisfied by a preponderance of the evidence that the parolee has breached a condition under which he was granted parole. RCW 9.95.125. *Standlee v. Smith,* 83 Wn.2d 405, 518 P.2d 721 (1974). This lower standard of proof can be met despite the parolee's incompetence. We therefore conclude that due process does not require a parolee to be competent at revocation proceedings.

We turn now to consider the relevance of the parolee's incompetence at the disposition stage of revocation proceedings. It appears to us that in deciding what steps to take to protect society and improve the parolee's chances of rehabilitation, the Board must consider the parolee's incompetence. Courts in several states, including Washington, have held that although insanity is not a defense to parole violation, lack of culpability is relevant to the appropriate disposition. *See State v. Johnson,* 9 Wn. App. 766, 514 P.2d 1073 (1973); *Steinberg v. Police Court,* 610 F.2d 449 (6th Cir. 1979); *People v. Breaux,* 101 Cal. App. 3d 468, 161 Cal. Rptr. 653 (1980) (and cases cited therein). Similarly, although incompetence is not a bar to revocation proceedings, due process requires that it be considered in determining the appropriate disposition.

Accordingly, the Board must have a reasonable basis upon which to evaluate the parolee's competence. There is no reason apparent to us that the Board should not have implicit in its powers the authority to order a competency evaluation whenever a parolee's competence is called into question at a revocation proceeding. The procedures set down by the Legislature in RCW 10.77.060 are as appropriate to a parole revocation proceeding as to a criminal trial, and may therefore guide the Board in ordering such an evaluation.

In the event that the parolee is determined to be incompetent, it seems that neither continued parole on the same conditions nor return to penal custody is necessarily in the best interests of the parolee or society. In any parole

revocation proceedings, the Board has authority to reinstate parole on modified conditions. RCW 9.95.125. The statute does not limit in any way the conditions that may be imposed. In cases where the parolee is determined to be incompetent, the most appropriate condition might well be that the parolee utilize the voluntary commitment provisions of RCW 71.05 for as long as treatment might be necessary or for as long as the institution is willing to continue treatment. If voluntary commitment is refused or if the institution is unwilling to continue treatment and the Board believes the parolee's incompetence jeopardizes public safety or the parolee's rehabilitation, then the Board would be warranted in revoking parole. This revocation could, under appropriate circumstances, be accompanied by a recommendation to the appropriate officials to transfer the committed person to a state mental institution, pursuant to RCW 72.68.031.

Voluntary civil commitment may not be appropriate to all incompetent parolees. It is for the Board to determine the disposition which is most effective for the particular parolee. We will not interfere with that determination unless the Board abuses its discretion.

The trial court's order requiring a competency evaluation for petitioner is affirmed, but insofar as it may be interpreted to deprive the Board of jurisdiction to deal with incompetent parolees or hold revocation hearings with reference to such a parolee, the order is modified.

BRACHTENBACH, C.J., and ROSELLINI, STAFFORD, UTTER, DOLLIVER, WILLIAMS, DORE, and DIMMICK, JJ., concur.