(No. 61000.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. ANITA ALLEGRI, Appellant.

*Opinion filed December 20, 1985.*

MILLER, J., took no part.
WARD and GOLDENHERSH, JJ., dissenting.

Daniel D. Yuhas, Deputy Defender, and Jeffrey D. Foust, Assistant Defender, of the Office of the State Appellate Defender, of Springfield, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Jill Wine-Banks, Solicitor General, and Mark L. Rotert and Sally L. Dilgart, Assistant Attorneys General, of Chicago, of counsel), for the People.

JUSTICE SIMON delivered the opinion of the court:

The defendant, Anita Allegri, entered a negotiated plea of guilty in the circuit court of Champaign County to the offense of unlawful restraint (Ill. Rev. Stat. 1981, ch. 38, par. 10—3(a)). She was charged with unlawfully attempting to take a two-year-old child from his father. The sentence was 30 months' probation conditioned upon her periodic incarceration in the county correctional facility as a work-release prisoner. In addition, her probation required her to refrain from violating any State laws and to report on a regular basis for psychological counseling.

Six months later the State charged her with a probation violation and sought to revoke her probation. The evidence demonstrated that the defendant had unlawfully restrained a 13-year-old boy in violation of the criminal code (Ill. Rev. Stat. 1981, ch. 38, par. 10—3(a)) and, as a result of that infraction, a condition of her proba-

tion had been violated.

Her defense was that she was insane (Ill. Rev. Stat. 1981, ch. 38, par. 6—2(a)) and could not be adjudged to have violated her probation because she was unable to control herself. Psychiatric testimony established that the defendant suffered from paranoid schizophrenia. The trial court made a specific finding that the State had failed to rebut this evidence, and that if the defense of insanity was available in a probation-revocation proceeding, the defendant would prevail.

The trial court ruled, however, that in a probation-revocation proceeding the defense of insanity was not available to the probationer. The defendant appealed, and the appellate court affirmed the trial court's ruling with one judge dissenting (127 Ill. App. 3d 1041). We allowed the defendant's petition for leave to appeal (94 Ill. 2d R. 315(a)). Thus, the question we are called upon to answer is whether insanity is an available defense in a probation-revocation proceeding, a question which this court has never considered.

The defendant argues that the insanity defense is appropriate here because the underlying basis for the probation revocation is a violation of the criminal code. She suggests that the criminal code is silent as to whether the defense is available in a revocation proceeding, and that the defense should therefore be applied because the legislature did not specifically exclude it.

Not only is defendant's statutory argument unsound, but her position would require that we ignore the legislative purpose behind probation.

The issue presented requires us to construe section 6—2(a) of the Criminal Code of 1961. It provides:

"Insanity. (a) A person is not criminally responsible for conduct if at the time of such conduct, as a result of mental disease or mental defect, he lacks substantial capacity either to appreciate the criminality of his conduct

or to conform his conduct to the requirements of law."
(Ill. Rev. Stat. 1981, ch. 38, par. 6—2(a).)

To determine legislative intent, we first look to the plain meaning of the statute as found in the words of section 6—2(a). (See, *e.g.*, *People v. Boykin* (1983), 94 Ill. 2d 138, 141; 2A Sutherland, Statutory Construction sec. 48 (4th ed. 1984).) Examination of this statute reveals that the legislature did not directly address whether the insanity defense applied to probation-revocation proceedings. The use of the words "criminally responsible" and "criminality of his conduct," though, indicates that the legislature was concerned with the possibility of conviction of an offense in the absence of criminal intent. While this language is not conclusive, it does suggest that the General Assembly's intent was that the insanity defense should apply only to proceedings in which guilt or innocence is to be determined. A probation-revocation hearing is not, however, such a proceeding. (*Gagnon v. Scarpelli* (1973), 411 U.S. 778, 36 L. Ed. 2d 656, 93 S. Ct. 1756.) It takes place only after the defendant has already been convicted, sentenced to probation, and then has violated the conditions of the probation.

Similarly, section 5—2—4 of the Unified Code of Corrections (Ill. Rev. Stat. 1981, ch. 38, par. 1005—2—4), which sets forth the procedure for treating defendants who are found not guilty by reason of insanity, also supports the conclusion that the insanity defense is not available in revocation proceedings. It requires a hearing to determine whether a defendant *acquitted* by reason of insanity should be involuntarily committed to a mental health facility. But, because the defendant in a probation-revocation proceeding has already been found guilty rather than acquitted, commitment of a defendant to a mental health facility by reason of his acquittal has no relevance to such a proceeding. This is especially true because a probation-revocation proceeding is not one

which leads to the acquittal or conviction of a defendant.

While the legislature did not explicitly exclude a defense based on insanity in a probation-revocation proceeding, this defense is inconsistent with the purpose of probation revocation. Probation is a form of judgment after the defendant has been found guilty. (*People ex rel. Barrett v. Bardens* (1946), 394 Ill. 511, 517.) The appellate court properly characterized probation as a privilege. It is employed when the defendant's continued presence in society would not be threatening and the defendant's rehabilitation would be enhanced. (See, *e.g., People v. Molz* (1953), 415 Ill. 183, 188; *Knight v. Estelle* (5th Cir. 1974), 501 F.2d 963, 964.) A violation of probation demonstrates to the court that the defendant is a threat to society and that his continued presence outside of jail is unwarranted.

The insanity defense had no bearing on the real issue at defendant's revocation hearing, which was whether the defendant's continued presence in society presents a danger. When the defendant unlawfully restrained a child, she demonstrated the threat which her continued freedom poses for society. That threat is no less real because defendant's insanity would excuse her from criminal responsibility.

Personal culpability is not required for a court to revoke a sentence of probation. (*People v. Davis* (1984), 123 Ill. App. 3d 349, 353 (defendant's failure to be accepted in drug- and alcohol-treatment program justified revocation).) This point is illustrated by section 5—6—2(c) of the Unified Code of Corrections, which provides that the "court may at any time terminate probation or conditional discharge if warranted by the conduct of the offender and the ends of justice." (Ill. Rev. Stat. 1981, ch. 38, par. 1005—6—2(c).) The legislature's choice of the word "conduct" strongly suggests that the key question in a revocation proceeding is whether the objective acts

of the defendant require revocation, not whether he is legally responsible for such acts. Indeed, the statute has no requirement that such conduct even be of a criminal nature, let alone criminally culpable. As the appellate court properly noted, if "insanity applied as a defense, the trial court would have no statutory authority to modify or revoke probation even though the defendant's actions clearly establish a violation of probation and a frustration of its purposes." 127 Ill. App. 3d 1041, 1044.

Defendant also contends that this court has, by implication, approved of the use of the affirmative defense of self-defense in probation-revocation proceedings. (*People v. Cooper* (1977), 66 Ill. 2d 509.) In *Cooper*, this court reversed an appellate court's evidentiary ruling but did not specifically consider the appellate court's approval of the use of self-defense at a probation-revocation proceeding. Regardless of the correctness of the appellate court decision on that issue, it does not provide a meaningful analogy to the defendant's situation.

Self-defense provides a justification, so that action which society otherwise seeks to prevent becomes permissible under the circumstances. Insanity, on the other hand, is an excuse for the individual's behavior. It does not turn unacceptable behavior into permissible conduct, but only excuses the individual from criminal punishment for having violated a penal statute. Because conduct excused on the basis of insanity is no more desirable, nor less criminal, than inexcusable conduct, section 5—2—4 requires involuntary admission into a mental health facility for those defendants who are declared insane, while acquittal by reason of self-defense allows the accused immediate freedom. Therefore, whether or not self-defense is applicable in a probation-revocation proceeding, an issue we do not decide here, it has no bearing on the applicability of the insanity defense in that type of proceeding.

Other States and the Federal courts have considered

this problem in the context of probation or parole revocations, and our research reveals that the conclusion we reach is in accord with their decisions. (See, *e.g., Steinberg v. Police Court* (6th Cir. 1979), 610 F.2d 449; *Knight v. Estelle* (5th Cir. 1974), 501 F.2d 963; *Pierce v. State Department of Social & Health Services* (1982), 97 Wash. 2d 552, 646 P.2d 1382; *State ex rel. Lyons v. Department of Health & Social Services* (1981), 105 Wis. 2d 146, 312 N.W.2d 868; *People v. Breaux* (1980), 101 Cal. App. 3d 468, 161 Cal. Rptr. 653; *State v. O'Meal* (1977), 116 Ariz. 307, 569 P.2d 249; *Trumbly v. State* (Alaska 1973), 515 P.2d 707.) In *Knight v. Estelle* (5th Cir. 1974), 501 F.2d 963, for example, the Federal appellate court for the fifth circuit examined Texas law in a case involving parole revocation (which does not significantly differ from probation revocation for our purposes. (See *Gagnon v. Scarpelli* (1973), 411 U.S. 778, 36 L. Ed. 2d 656, 93 S. Ct. 1756).) The court noted:

"[I]f the parolee has committed the physical act, the attempt to reintegrate him into society has obviously failed ***. Whether the act which made the failure apparent was culpable or punishable is no concern of the revocation authority, which does not sit to punish. Its concern is whether the law has been obeyed, not whether it has been culpably broken." (501 F.2d 963, 964.)

We believe our General Assembly enacted the probation provision for the same reasons and intended that the same procedure apply.

Additionally, we note the dilemma which would confront a sentencing judge were we to reverse the appellate court. In cases where probation seems appropriate but there exists some risk that the defendant will commit an excusable offense during the probationary period, the judge would have to choose between sentencing the defendant to an unnecessary period of incarceration or granting probation at the risk of having made an uncor-

rectable error. We can find no just reason to saddle trial judges with such a Hobson's choice.

Finally, the State contends that the defendant's right to due process does not require that the insanity defense be made applicable to a probation-revocation hearing. We need not directly address this argument, as the defendant has failed to argue this particular issue in this court and has instead chosen to rely solely on the statutory language.

It is critical to note that in refusing to recognize the insanity defense in a revocation proceeding, the court is not imposing criminal punishment on the defendant for her present excusable conduct. The criminal punishment results from the past conduct which was not excused by insanity and for which defendant has been duly convicted. We therefore hold that the circuit and appellate courts properly found that the insanity defense does not apply in probation revocation proceedings.

*Judgment affirmed.*

JUSTICE MILLER took no part in the consideration or decision of this case.

JUSTICE WARD, dissenting:

I cannot accept the majority's holding that insane persons cannot plead their disability at a probation-revocation hearing and are subject to punishment, though they were not mentally responsible for the conduct that the State says violated their probation. It is not questioned that such persons could have pleaded insanity and could not have been found guilty if the insanity existed when the criminal charges were brought. In the event of later developing disability and conduct violating terms of probation the majority's view is that the probationer's "continued presence outside of jail is unwarranted." (109 Ill. 2d at 314.) The majority's conclusion is founded on what I consider to be the strange construction that the General

Assembly, in section 6—2(a) of the Criminal Code of 1961, intended that the defense of insanity would apply only to trial proceedings at which the guilt of the accused was to be determined. It appears obvious to me that the General Assembly, in enacting the statute making insanity a defense, intended to insure fairness toward persons with the specified mental disease or mental defect. It is inconceivable that the General Assembly intended that this fairness to handicapped persons would not be extended to all proceedings and especially to those in which punishment was sought by the State.

The majority says, too, that the real issue at the probation-revocation hearing was whether the defendant's continued presence in society presented a danger. I consider that the important question here is whether this court should approve the denial of a hearing to a woman who, it is claimed, because of mental deficiency could not adequately understand or control conduct for which the State seeks her punishment.

To support its position the majority cites a decision which held that whether the conduct that violated the terms of probation was culpable is of no concern and that the only concern is whether the terms of probation have been observed. That is a view I cannot share.

The majority concludes by stating that it need not, on the ground of waiver, address the question whether the right to due process requires recognition of the insanity defense in a probation-revocation hearing. I believe that the question of due process and also the question of constitutional protection against cruel and unusual punishments are involved and that here both protections were ignored. *Ford v. Wainwright* (11th Cir. 1985), 752 F.2d. 526, *cert. granted* (1985), 474 U.S. \_\_\_, 88 L. Ed. 2d 552, 106 S. Ct. 566.

JUSTICE GOLDENHERSH joins in this dissent.