Filed 9/1/16  P. v. Ward CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　　v.<br><br>RONALD ART WARD,<br><br>　　　Defendant and Appellant. | B264117<br><br>(Los Angeles County<br>Super. Ct. No. BA425485) |

APPEAL from an order of the Superior Court of Los Angeles County, Richard S. Kemalyan, Judge.  Affirmed.

Roberta Simon, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Stephanie A. Miyoshi and Allison H. Chung, Deputy Attorneys General, for Plaintiff and Respondent.

_____

## INTRODUCTION

Defendant and Appellant Ronald Art Ward appeals from the trial court's order revoking probation, arguing that the court abused its discretion in revoking probation based on a "minor violation" occurring shortly after probation was imposed. We affirm as the trial court reinstated probation on two separate occasions before determining that Ward was not a suitable candidate for probation.

## FACTS AND PROCEDURAL BACKGROUND

On September 15, 2014, Ward pleaded no contest to selling a controlled substance in violation of Health and Safety Code section 11352, subdivision (a), and misdemeanor resisting, obstructing, and delaying a peace officer in violation of Penal Code section 148, subdivision (a)(1). The court sentenced Ward to six years in local custody, suspended execution of sentence, and imposed five years of formal probation on the condition that he complete a one-year residential treatment program. The court advised Ward that if he left or was terminated from the program, he must report to the court within 48 hours. Ward twice stated that he understood the court's warnings. The prosecutor likewise advised Ward of the terms of his plea and the consequences of violating the probation terms, and Ward said he understood them. As to the residential treatment program, the court ordered Ward to enroll in, comply with all program terms and conditions of, and complete a 365-day residential treatment program at In2Rekovery. Ward stated that he understood, acknowledged and accepted the terms and conditions of his probation. Sheriff's deputies transported Ward to In2Rekovery.

When In2Rekovery asked Ward for a $700 fee, Ward walked away from the program. Ward did not report back to court. The probation department referred Ward to other programs; Ward failed to enroll and did not report to court. On October 27, 2014, the trial court was advised that Ward left In2Rekovery program and it summarily revoked probation.

At the next hearing on November 7, 2014, the court remarked that "[i]t doesn't sound like this was the defendant's fault. It sounds like perhaps the incorrect program was located for him." On November 12, 2014, Ward admitted he was in violation for failing to enroll in and complete the In2Rekovery program. The court revoked and reinstated probation on the same terms and conditions, but this time required Ward to enroll in and complete a 365-day residential treatment program at Second Chance Recovery. Again, the court advised Ward that if he left the program voluntarily or was terminated, he must appear in court within 48 hours. That day, sheriff's deputies transported Ward was to Second Chance Recovery. That day, Ward left Second Chance Recovery and did not report back to court.

When so advised on December 12, 2014, the trial court again summarily revoked probation. At the next hearing on January 16, 2015, Ward claimed that he left the program in fear for his life because he was approached by some men at the program who threatened him and his family. Ward stated that he did not appear in court within 48 hours because he was admitted to a hospital and treated for ulcers. Defense counsel indicated that Ward may have a mental health problem and suggested that he needed a "dual diagnosis program." The prosecutor argued that since Ward failed to take advantage of the two previous programs, another chance to complete a drug program would probably end in failure, and that the court should impose the previously suspended sentence. The court noted that it could very easily impose the previously suspended sentence based on Ward's two failures to enroll in and complete a residential treatment program. The court nonetheless gave Ward another opportunity to participate in a residential treatment program. Ward admitted his violation. The court revoked and reinstated Ward's probation, with additional orders to enroll in and complete a dual-diagnosis program for one year at Second Chance Recovery. Indicating that this was his last chance, the court reiterated that Ward was required to return to the court within 48 hours if he left or was terminated from the program. The court stated: "My biggest concern, sir is that the last time you were in violation, I told you that if you left the

3

program you were to return to this courtroom within 48 hours and you didn't. That's going to again be one of the terms that I'm going to put on this."

Three weeks later, on February 26, 2015, the court again learned that Ward was not enrolled in Second Chance Recovery and it summarily revoked probation. At the March 9, 2015 hearing, Defense counsel explained that Ward completed the intake process at Second Chance Recovery, and then became hungry and was granted permission to leave and obtain food. Counsel stated that when he left, Ward suffered a psychotic episode and experienced some auditory hallucinations that compelled him to engage in "certain behavior." Ward did not return to the program or report to the court due to the episode. At the hearing, Ward sought another opportunity to participate in the program.

The trial court stated: "[T]his is the third occasion in which Mr. Ward has left the program and likewise, the third occasion that he has failed to return to court within the time period provided by the court. I believe in my considered judgment in this matter that probation should be terminated at this time. The defendant does not appear any longer to be a candidate for probation." The trial court imposed the previously suspended six-year sentence. Five months had passed since Ward had been granted probation.

## DISCUSSION

Ward challenges the termination of his probation, arguing that "the trial court abused its discretion when it terminated probation based on a minor violation which occurred shortly after [Ward] was placed on probation[,] thus denying [Ward] an opportunity to complete a dual diagnosis program." (Capitalization omitted.) We disagree.

A court may, in the interest of justice, revoke probation if it has reason to believe the defendant has violated any condition of probation. (Pen. Code, § 1203.2; *People v. Urke* (2011) 197 Cal.App.4th 766, 772.) The facts supporting a revocation of probation need only be proven by a preponderance of the evidence (*People v. Rodriguez* (1990) 51 Cal.3d 437, 439), but the evidence must support a conclusion that the probationer willfully violated the terms and conditions of probation. (*People v. Cervantes* (2009)

4

175 Cal.App.4th 291, 295; *People v. Zaring* (1992) 8 Cal.App.4th 362, 378–379 (*Zaring*).)  Noncompliance is not willful when it is attributable to circumstances beyond a probationer's control.  (*Ibid.*)

Revocation lies within the trial court's broad discretion (*People v. Self* (1991) 233 Cal.App.3d 414, 417), "and the court's discretion will not be disturbed in the absence of a showing of abusive or arbitrary action."  (*People v. Silva* (1966) 241 Cal.App.2d 80, 84.)

Here, the court informed Ward on three separate occasions that he had to enroll in and complete a 365-day residential treatment program and appear in court within 48 hours if he left the program.  Ward verbally acknowledged and agreed to these terms three times.  Nonetheless, as Ward himself admitted, he failed to complete the treatment program and to report to court as ordered.

Ward makes two arguments.  First, relying on *Zaring,* Ward argues his violations were not willful as they were associated with medical and psychological problems.  In *Zaring*, the trial court accepted the probationer's explanation she was 22 minutes late because she had to take her children to school due to a "last minute unforeseen circumstance," but nonetheless found her in violation of probation for failing to appear in court on time. (*Zaring*, *supra,* 8 Cal.App.4th 362 at p. 379.)  The Court of Appeal concluded the trial court abused its discretion because there was no evidence that the defendant's tardiness was "the result of irresponsibility, contumacious behavior or disrespect for the orders and expectations of the court."  (*Ibid.*)

In contrast, the case at bar does not involve circumstances that made compliance with the terms of probation out of Ward's control.  Ward was transported to the treatment programs, chose to leave the programs, and did not report to the court thereafter.  The court accepted Ward's excuses at face value and reinstated him twice, specifically noting its "biggest" concern that Ward failed to report after leaving the program.

Ward asserts his probation violations were the product of mental illness and thus not willful. The record includes, at best, oblique evidence of a mental health problem, to wit: (1) in a Pitchess motion prior to the plea, defense counsel stated, without foundation, that Ward suffered from paranoid schizophrenia; (2) at a Marsden hearing prior to the plea, Ward stated he had mental health problems and wanted his attorney to obtain his CDC records, and defense counsel testified that she had reviewed the records which contained no helpful information on the issue; (3) on January 16, 2015, defense counsel pointed out that Ward was in yellow county jail garb, indicating that he may be receiving mental health treatment; (4) at the same hearing, Ward stated he was now taking risperdal; and (5) when the court reinstated probation the second time, it noted that "because of certain other issues that may involve some medication that we all probably think you should be on, I'm going to give you another opportunity."

This evidence, taken together, does not support the conclusion that a mental illness prevented Ward from willfully complying with the terms and conditions of probation, particularly the requirement that he return to court if he left the program.

Ward's second argument is that the trial court abused its discretion because it did not give Ward enough time to benefit from the dual diagnosis program. A probationer's mental health is relevant to the discretionary aspect of the court's decision whether to revoke or modify probation. (*People v. Breaux* (1980) 101 Cal.App.3d 468, 474.) Here, the trial court sympathetically attempted to fashion a residential program that addressed Ward's asserted, if not verified, mental health issues. In reinstating probation twice, the trial court emphasized to Ward the importance of reporting to court if he left the program. Ward never did so and never explained why he failed to return to court at anytime following his exit from the program, even outside of the 48-hour reporting period. Based on the foregoing, we conclude that the trial court's revocation of probation and execution of sentence did not constitute an abuse of discretion.

**DISPOSITION**

The order is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


STRATTON, J.[*]

I concur:



EDMON, P. J.



LAVIN, J.

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

7