Filed 11/20/24  P. v. Rizo-Macias CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br>     Plaintiff and Respondent,<br>v.<br><br>GUSTAVO RIZO-MACIAS,<br>     Defendant and Appellant. | A170064<br><br>(Contra Costa County<br>Super. Ct. No. 01001984541) |

Defendant Gustavo Rizo-Macias was placed on probation after he pled no contest to, and was convicted of, two counts of false imprisonment by violence.  (Pen. Code, §§ 236, 237.)[1]  He appeals after the trial court found he had violated the terms of his probation, revoked his probation, and sentenced him to a total term of two years in county jail.  His appointed counsel on appeal filed a brief raising no issues but seeking our independent review of the record, citing *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*).  This appeal is not subject to *Wende* review because it is not a direct appeal from a criminal conviction.  (*People v. Delgadillo* (2022) 14 Cal.5th 216, 222, 224–226 (*Delgadillo*); *People v. Freeman* (2021) 61 Cal.App.5th 126, 134 (*Freeman*).) Nonetheless, we have exercised our discretion to independently review the record, and we affirm.

---

[1] Further undesignated statutory references are to the Penal Code.

# BACKGROUND

On or about March 10, 2022, defendant entered a restaurant, displayed and swung a knife, and threatened others in the restaurant, stating that no one could leave until he " 'gets his brother.' "  Upon his arrest, he was found to be in possession of suspected methamphetamine.

On March 14, the People charged defendant with assault with a deadly weapon (§ 245, subd. (a)(1)) (count 1); false imprisonment by violence (§§ 236, 237) (count 2); criminal threats (§ 422, subd. (a)) (count 3); and resisting a peace officer (§ 148, subd. (a)(1)) (count 4).  The complaint also alleged that defendant personally used a deadly weapon (§ 12022, subd. (b)(1)) in committing counts 1 through 3.  And it alleged that defendant violated his then existing probation terms by committing the charged offenses.

On June 3, defendant pled no contest to count 2 and a newly added count 5, also for false imprisonment by violence.  He further admitted he had violated his probation.  In exchange, the People dismissed the remaining counts and enhancements.

The trial court suspended execution of sentence and placed defendant on formal probation for two years.  Terms and conditions of his probation included that defendant was to serve 180 days in county jail; complete a 90-day residential drug treatment program after completing his jail term; obey all laws; and report to his probation officer within five days of the probation order, upon his release from jail, and as directed by his probation officer.  The court indefinitely suspended a $300 restitution fine due to defendant's inability to pay, which was established by the fact he was unhoused and unemployed.

Over the next year and a half or so, the People filed five petitions to revoke defendant's probation for violating his probation terms.

2

The first of these was filed on May 10, 2023, alleging a failure to report to probation. Defendant admitted the violation. The trial court reinstated his probation and imposed a jail term of 24 days.

On August 7, a second petition to revoke probation was filed based on defendant's failure to report to probation and his recent arrest for possessing a controlled substance. Defendant admitted he violated his probation. The trial court reinstated his probation and imposed a jail term of 45 days.

On September 19, the People filed a third petition to revoke probation, alleging defendant had violated probation by committing arson. Defendant admitted his violation and was ordered to serve another 84 days in county jail under a reinstated term of probation.

On November 1, the People filed a fourth petition to revoke probation, alleging defendant had committed a battery. At a hearing on December 7, the People dismissed the petition because they could not proceed with proof of the petition. The trial court ordered defendant to report to probation within five days of his release from custody.

On January 11, 2024, the People filed the fifth petition to revoke probation, alleging defendant had violated probation by failing to report to probation within five days of his release from custody or anytime thereafter. Probation recommended that the trial court terminate defendant's probation and sentence him to 90 days in county jail.

On February 1, 2024. the trial court held a contested hearing, during which it heard testimony from defendant's probation officer, Peter Taylor. Taylor testified that defendant was released from jail on December 7, 2023, but failed to contact Taylor anytime thereafter. Taylor also detailed his unsuccessful efforts to obtain valid contact information for defendant through online databases. Following this testimony, the trial court found defendant

3

had violated his probation.

At the sentencing hearing on February 29, the trial court indicated it was inclined to revoke defendant's probation and impose the mid-term of two years in county jail for his underlying false imprisonment offense charged in count 2, and a concurrent two-year term for the other false imprisonment offense charged in count 5. Citing California Rules of Court, rule 4.435, the court stated it had considered the facts of the underlying offenses, as well as defendant's performance on probation from the time of the initial grant of probation up until his last reinstatement. The court recounted defendant's "assaultive behavior" in committing the underlying offenses, specifically that "[defendant] [went] into a restaurant with a 12-inch cleaver. Once inside, he was swinging the knife in the direction I believe of two employees, which is how the two counts come about, yelling, 'I will kill you.' Then the employees ran out of the restaurant and the defendant approached the front of the restaurant yelling, 'No one is leaving until I get my brother.' " The court also observed that defendant's "past performance on supervision was so poor," having violated his probation multiple times.

The prosecutor agreed with the trial court's tentative decision to impose a two-year jail term as to count 2, but as to count 5, asked the court to impose a term of eight months to run consecutively rather than concurrently.

Defense counsel noted that defendant struggled with mental health issues, which counsel did not specify, and that defendant had been placed in a mental health module in county jail where he was receiving treatment and medication. Counsel then posited, "it seems as though the large number of revocations have dealt with an inability to follow through, which was, I imagine . . . dealing with his mental health diagnosis." Counsel also offered information about defendant's background and upbringing, including that he

4

was undocumented, transient, and slept under a bridge. Counsel asked the trial court to follow the probation department's recommendation to impose a term of 90 days in county jail "and then TU it," with "TU" apparently referring to the Transportation Unit of the Contra Costa County Sheriff's Office, which transports inmates to and from medical appointments and mental health facilities.

The trial court stated it had taken into account defendant's mental health issues, which is why it "did not go to the two years, eight months" as the People requested. The court, however, declined the defense's request to impose a 90-day jail term. While the court credited defendant for maintaining contact with probation for about ten months following the initial grant of probation, the court stated defendant had failed to do so afterwards. Defendant also failed to complete the drug treatment program that originally was ordered as a condition of his probation and designed to address his mental health issues. The court went on, "we reached a point where he has very little time on probation. I can't ignore the fact that his actions are and were a danger to the public. . . . [¶] So for a limited time, I can protect the public. For a limited time, [defendant] will remain in the mental health module and continue to get medication. And I think . . . that balances best . . . at this time by imposing the two years concurrent."

The trial court permanently revoked defendant's probation and sentenced him to the mid-term of two years in county jail for count 2, and a concurrent two-year term for count 5, with 497 total days of pretrial custodial credit.

This appeal followed.

## DISCUSSION

As mentioned, appellate counsel submitted a brief pursuant to *Wende*

5

raising no issues and asking us to independently review the record. Because this appeal is not a direct appeal from a criminal conviction, we are not required to undertake an independent review of the record in search of arguable issues. (See *Delgadillo*, *supra*, 14 Cal.5th at pp. 222, 224–226; *Freeman*, *supra*, 61 Cal.App.5th at p. 134.) However, because both counsel and this court have been unable to locate and inform defendant that he could abandon his appeal by failing to file a supplemental brief (*Delgadillo*, *supra*, at p. 233),[2] we have conducted a discretionary review of the record. (*Id.* at p. 232.)

After independently reviewing the record, we found no arguable errors that would result in a disposition more favorable to defendant.

The trial court's finding that defendant violated his probation by failing to report to probation was supported by substantial evidence. Although defendant's trial counsel suggested, without much explanation, that defendant's failure to report was due to his mental health issues and thus not willful, defendant's mental state was not a valid defense to the probation violation charge. (*People v. Breaux* (1980) 101 Cal.App.3d 468, 474 ["[T]he fact that an act constituting a probation violation was committed while the defendant was insane is not a defense to a probation violation charge"]; see

---

[2] We sought to notify defendant of his right to submit a supplemental brief on his own behalf. In counsel's declaration attached to the *Wende* brief, he states that defendant has been released from custody, that counsel does not have defendant's contact information, and that counsel thus has been unable to inform defendant of his right to file a supplemental brief. However, counsel goes on to state that he "is sending [defendant] a copy of this brief." Our clerk followed up with counsel to clarify whether he had defendant's contact information or otherwise could locate him and, if so, to provide us with his contact information. Counsel confirmed he did not have that information and was unable to reach defendant.

*id.* at pp. 472–473, 474 [reasoning that the purpose of a revocation hearing is not to determine legal responsibility as in a criminal trial, but to protect the public and further rehabilitation]; 3 Witkin, Cal. Crim. Law (5th ed. 2024) Punishment, § 828.)

A defendant's mental state is, however, relevant to the discretionary aspect of the trial court's decision whether to revoke probation. (*People v. Breaux, supra,* 101 Cal.App.3d at p. 474.) Here, the trial court expressly considered and was apparently sympathetic towards defendant's mental health struggles in deciding whether to revoke his probation. At the same time, the court "[could not] ignore" the fact that defendant posed a danger to public safety, as evidenced by the "assaultive" nature of his underlying offenses and his commission of new offenses while on supervision. The court also noted that mental health treatment was available to defendant in the county jail, which he was already receiving. Considering these circumstances, we cannot say the trial court abused its discretion in revoking defendant's probation and sentencing him to a total term of two years in county jail.

## DISPOSITION

The judgment is affirmed.

_____

RICHMAN, ACTING P. J.

We concur.

_____

MILLER, J.

_____

DESAUTELS, J.

(*People v. Rizo-Macias A170064N*)